Exhibit 1

DISTRICT COURT
SOUTH PARIS
Docket No   SOPDC-RE-2021-00006

KEVIN FROST  - PLAINTIFF                                                    **DOCKET RECORD**
36 COBBLE HILL RD
SOUTH PARIS ME 04281
   vs
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC - DEFENDANT
P O BOX 2026
FLINT MI 48501-2026
FEDERAL NATIONAL MORTGAGE ASSOCIATION - DEFENDANT
1100 15TH ST
NW WASHINGTON DC 20005
OCWEN LOAN SERVICING LLC - DEFENDANT
1661 WORTHINGTON RD SUITE 100
WEST PALM BEACH FL 33409
PHH MORTGAGE SERVICES - DEFENDANT
1 MORTGAGE WAY
MT LAUREL NJ 08054
CASTLE POINT MORTGAGE - DEFENDANT
6800 DEERPATH RD SUITE 105
ELKRIDGE MD 21075
MIDLAND FUNDING - PARTIES IN INTEREST
C/O HOWARD LEE SCHIFF PC P O BOX 280245
EAST HARTFORD CT 06128-0245

Filing Document:   COMPLAINT              Minor Case Type:        QUIET TITLE
Filing Date:       03/25/2021

Docket Events:
03/25/2021   FILING DOCUMENT - COMPLAINT FILED   ON 03/25/2021


      Receipts
      03/25/2021     Misc Fee Payment          $175.00        paid.


A TRUE COPY
ATTEST: _____
      Clerk

**MAINE JUDICIAL BRANCH**

Kevin B. Frost _____ Plaintiff

V.

Mortgage Electronic Registration Systems, INC Defendant

*"X" the court for filing:*
☐ Superior Court ☒ District Court
County: Oxford
Location (Town): South Paris
Docket No.: RE-2021-06

**ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT OR POST-JUDGMENT MOTION**

M.R. Civ. P. 4(c)(1)

**NOTICE**

Please sign the acknowledgment below and return this form in the enclosed self-addressed stamped envelope so it will be received by the sender within 20 days from the day it was mailed to you. If you do not do this, you may be required by the Court to pay for the cost of serving the Summons and Complaint or Post-Judgment Motion on you.

**(Keep one copy of this form and the copy of the Complaint or Motion for your records.)**

**STATEMENT**

By signing, dating and returning this form, I state that I received a copy of the Summons and Complaint or a copy of the Post-Judgment Motion and that:

**AS TO ALL CIVIL COURT CASES, INCLUDING DIVORCE, JUDICIAL SEPARATION AND PARENTAL RIGHTS & RESPONSIBILITES,** I understand that if I do not file an answer to the Complaint or an objection to the Motion within the time limits established by statute or court rule and appear at all court conferences and hearings, then a judgment may be entered against me in my absence, and Plaintiff or the moving party may request that other orders be entered against me.

**AS TO DIVORCE, JUDICIAL SEPARATION, AND PARENTAL RIGHTS & RESPONSIBILITIES CASES,** I understand that if I do not want to file an Answer to the Complaint, but I do want to be heard on issues of parental rights and responsibilities regarding my children, alimony, support, counsel fees and division of marital and non-marital property, I must file an Entry of Appearance form and appear at all court conferences and hearings. I may file an Answer and Counterclaim (Forms FM-186/FM-187) to a divorce or parental rights and responsibilities' complaint. If I intend to file an Answer and Counterclaim, I understand it must be filed within 20 days of being served with the complaint. You can get an Answer and Counterclaim at any District Court or at www.courts.maine.gov.

Date (*mm/dd/yyyy*): _____  ▶

Signature _____

Printed Name: _____
☐ Attorney for: _____
Bar No. (*if applicable*): _____
Address: _____

Phone: ( ) _____
Email: _____

**IMPORTANT WARNING: You are responsible for notifying the court clerk of any changes to your address and telephone number. If you do not inform the clerk of any changes to either your address or telephone number, it may not be possible for you to get notices of court conferences and hearings.**

ADA Notice: The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
Language Services: For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CV-FM-036, Rev. 02/21                Page 1 of 1                www.courts.maine.gov
Acknowledgment of Receipt of Summons and
Complaint or Post-Judgment Motion

STATE OF MAINE

OXFORD, SS:

DISTRICT COURT

LOCATION SOUTH PARIS

CIVIL ACTION

DOCKET NO. RE-2021-06

---

KEVIN B. FROST

  PLAINTIFF

     v.

CASTLE POINT MORTGAGE, INC., and/or the
Heirs and/or successors of it, and anyone
claiming by, through, or under it, and the legal
heirs, representatives, devisees, assigns, trustees
in bankruptcy, disseizors, creditors, lienors and
any and all other persons unascertained or not in
being or unknown or out of this state and all
other persons who may claim any right, title,
interest, or estate, legal or equitable, in the land.
and real estate and mortgage through or under it,, and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., and

FEDERAL NATIONAL MORTGAGE ASSOCIATION., and

OCWEN LOAN SERVICING, LLC., and

PHH MORTGAGE SERVICES

  **DEFENDANTS**


MIDLAND FUNDING

  **PARTIES-IN-INTEREST**

**PROPERTY ADDRESS:**
**36 Cobble Hill Rd., South Paris,**
**Oxford County, Maine**

**MORTGAGE RECORD IN:**
**Oxford (East) County Registry of**
**Deeds in Book 4271 at Page 208**

**TITLE TO REAL ESTATE IS**
**INVOLVED**

1

### TO QUIET TITLE and/or FOR EQUITABLE RELIEF

**NOW COMES** Plaintiff Kevin B. Frost as Pro Se complains against the Defendant(s) and Parties-in-Interest to Quiet Title pursuant to 14 M.R.S.A. §6651, et seq. and/or for equitable relief, as follows:

1. This is an action to quiet title pursuant to 14 M.R.S.A. § 6651-6658, and/or for equitable relief. This Court is vested with the authority and jurisdiction associated therewith pursuant to 4 M.R.S.A. §5(B), (I) and (O)(3).

2. Title is for a certain real property located at 36 Cobble Hill Road, Town of South Paris, Oxford County, Maine, by virtue of a deed from Robert Malcolm Packard, recorded in the Oxford County Registry of Deeds in Book 2957 at Page 282, tax ID#:R5/25.22.

### Parties

3. Plaintiff repeats and realleges the allegations contained in paragraph(s) 1-2 as if more fully stated herein.

4. Plaintiff Kevin B. Frost (hereinafter referred to as the Property Owner) currently resides, is in possession and is the owner of certain real property in paragraph 2. The Property Owner claims an estate of freehold therein or an unexpired term of not less than 10 years. Property Owner has conveyed such property and interest therein with covenants of title or warranty, upon which he may be liable, may. Property Owner hereby claims to have been in uninterrupted possession of such property for 4 years or more and brings this action in the Oxford County District Court respectively in which said real property lies, setting forth this estate.

5. Defendants include a Mortgage that has been subject to one or more assignment(s), as follows

2

    a.  Castle Point Mortgage, Inc. February 15, 2008.

    b.  Mortgage Electronic Registration Systems, Inc., Solely as nominee for Castle Point Mortgage, Inc. February 18, 2008.

    c.  Federal National Mortgage Association dated July 27, 2010.

    d.  Ocwen Loan Servicing, LLC August 27, 2015.

    e.  PHH Mortgage Services ("PHH") on behalf of Ocwen Loan Servicing, February 1, 2019.

6. Upon information and belief Castle Point Mortgage, INC. (hereinafter referred to as "Castle Point" or as "Original Lender") was an entity incorporated under the laws of the State of Maryland with a place of business formerly located at 6800 Deerpath Road, Suite 105, Elkridge, MD 21075 and, if no longer existing and/or conducting business at such mailing and/or business location, the whereabouts of which and/or status of which are unknown *see* Exhibit A.

7. Upon information and belief, National Registered Agents, Inc. is the Registered Agent for Castle Point Mortgage, Inc. in Maine, and has a mailing address of P.O, Box 509 Readfield, ME 04355. The agent itself is, upon information and belief, still conducting business, however, is solely a service provider for designation by other parties as an agent and is not a subsidiary of Original Lender. Therefore, he/she/they/it may be no longer authorized for or conducting business on behalf of Original Lender due to the underlying status of Original Lender as hereinafter recited. The whereabouts of any other agent in Maine is unknown and believed to not exist based upon the status of Original Lender, as hereinafter recited in paragraph(s) 8-9 *see* Exhibit B.

8. Upon information and belief Castle Point was an organized and existing as aforesaid, and had, per the records of the Maine Secretary of State, its foreign authority to transact business in Maine was withdrawn on or about July 2, 2008 *see* Exhibit B. The records of the Secretary of State for Maryland show Castle Point is not in good standing and its status was forfeited *see* Exhibit C. The records of the National Information Center for the Federal Financial Institution Examination Council list Castle Point as having the address aforesaid. No further information is known regarding Castle Point *see* Exhibit D.

9. Castle Point Mortgage, Inc., referred to as the legal heirs, representatives, devisees, assigns, trustees in bankruptcy, disseizors, creditors, lienors and any and all other persons unascertained or not in being or unknown or out of this state and all other persons who may claim any right, title, interest, or estate, legal or equitable, in the hereafter described land and real estate and mortgage through or under said Castle Point Mortgage, Inc. (collectively the "Unknown Defendants") reside in several different locations and/or their whereabouts are not known at this time.

10. Upon information and belief, Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Castle Point Mortgage, Inc., is an entity having a mailing address of P.O. Box 2026, Flint, MI 48501-2026. (the said "Mortgage Electronic Registration Systems, Inc." hereinafter referred to as "MERS" and the said Castle Point Mortgage, Inc., as above referenced, being the Original Lender) by instrument by him/her/them dated February 18, 2008 and recorded in the Oxford County Registry of Deeds in Book 4271 at Page 208. A copy of the Mortgage is attached hereto as Exhibit E.

11. Upon information and belief Federal National Mortgage Association., acting as an investor (hereinafter referred to as "FNMA") is an entity having a mailing address of 1100 15th Street, NW Washington, DC 20005 hereinafter referred to as "FNMA"

12. Upon information and belief Ocwen Loan Servicing, LLC is an entity having a mailing address of 1661 Worthington Road, Suite 100, West Palm Beach, FL. 33409 hereinafter referred to as "Ocwen" *see* Exhibit F.

13. Upon information and belief PHH Mortgage Services is acting on behalf of Ocwen loan Services and is an entity having a mailing address of 1 Mortgage Way Mt. Laurel, NJ 08054 hereinafter referred to as "PHH" *see* Exhibit F.

14. Upon information and belief Midland Funding as Parties-in-Interest, is represented by Howard Lee Schiff, P. C. that is an entity having a mailing address of P. O. Box 280245, East Hartford CT 06128-0245.

## FACTS AND INFORMATION COMMON TO ALL COUNTS

15. Plaintiff repeats and realleges the allegations contained in paragraph(s) 1-14 as if more fully stated herein.

16. The Plaintiff brings the action to settle an ongoing controversy over the ownership of the real property in paragraph 2. This controversy involves multiple defendants who have and may again claim interest in the said property. The controversy is centered around the note, the mortgage, the status of Castle Point the Original Lender and the transfer or lack thereof of the Original lender's interest and rights.

17. On February18, 2008 the Property Owner signed a promissory note to Castle Point *see* Exhibit G.

5

18. Also, dated February 18, 2008 the Property Owner's signature appears on a mortgage that is in the interest of Castle Point with MERS acting as nominee for Castle Point for purposes of recording the mortgage only *see* Exhibit E.

19. In 2010 MERS assigned the mortgage to FNME *see* Exhibit H.

20. In 2016 FNME assigns mortgage to Ocwen Loan Servicing *see* Exhibit I.

21. In 2019 PHH Mortgage Services takes over servicing on behalf of Ocwen *see* Exhibit F.

22. As of 2021 MERS database shows this account with MIN #:10012735-3000135578-7 as inactive *see* Exhibit J.

23. As to paragraph 14 there is a lien ordered on a debt owed by the Plaintiff in the approximate sum of four thousand dollars. A payment arrangement has been made.

## COUNT I
### Action to Quiet Title at Law

24. Plaintiff repeats and realleges the allegations contained in paragraph(s) 1-23 as if more fully stated herein.

25. Plaintiff is averring that an apprehension exists that defendants, claiming or may claim some right, title or interest in the premises in adverse to the estate; and that such apprehension creates a cloud upon the title and depreciates the market value of the property; and praying that such persons (defendants) be summoned to show cause why they should not bring an action to try the title to the described premises.

26. Upon information and belief Castle Point still holds interest in the mortgage and may hold interest in the note. There is no legal instrument of conveyance offered that is written directly from the Original Lender to another lender granting all rights of the mortgage.

6

27. Castle Points whereabouts is unknown and is thought to be completely defunct. Castle
Point has not conducted business in Maine since 2008 and no other information known
see paragraph(s) 6 - 9. The defunct status of the Original Lender is also evidenced by
their absence here in this court. The appearance of Castle Point holding interest could
cause questions of ownership therefore creating a cloud on the title. The Property Owner
prays the Court will consider this a forfeit of any rights, claims and/or interests Castle
Point may have in said title.

28. MERS acting as nominee for Castle Point has resulted in a conundrum of legal
technicalities that ultimately has led to actions that have clouded this title.

29. MERS role as nominee for Castle Point and the specific terms in the mortgage contract
brings into question all claims regarding rights to this mortgage and the legal ownership
and possession of the note. MERS role was to act as nominee on behalf of Castle Point
for the sole purpose of recording this mortgage. MERS does not and did not have any of
the rights in the mortgage or the note and cannot or could not transfer any rights beyond
recording the mortgage.

30. Exhibit E shows the mortgage contract that involves MERS is written with the same
specific applicable language as in *Saunders,* 2010 ME. granting only the right to record
the mortgage *see Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 Me. 79, ¶¶ 9-10,
2A. 3d 289, *see Bank of Am., N.A. v. Greenleaf*, 2014 Me. 89, ¶ 14, 96 A. 3d 700.
Moreover, all assignments of the Mortgage can only transfer the right to record the
mortgage *see Bank of America, N.A. v. Greenleaf*, 2014 Me. 89 ¶¶ 16-17.

31. MERS involvement gives cause to question all who may claim to be the holder of the
note *see*: California court decision, May 20, 2010, Walker, Case no. 10-21656-E–11. The

7

opinion states: "Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."

32. Upon examination of the note here in this currant case before this honorable Court, the note is signed in favor of Castle Point in 2008 *see* Exhibit G, it reveals that MERS is not named in anyway in the note. Upon examination of the mortgage *see* Exhibit E, the note is mentioned however it does not indicate any transfer of the said note to MERS *see MERS v. Saunders*, 2010 Me. 79, ¶¶ 9-12.

33. If the note can be produced, just having simple possession of the original signed note is not enough to prove a legal conveyance of ownership of the said note because of the Case Law in paragraph(s) 30-32 no lender could have legally acquired the note and/or it's rights directly from MERS. There would have to be a legal instrument of conveyance (a bridge) from Castle Point directly to a new lender and so on. The case law in paragraph 30 also dictates not only that MERS could not have legally transferred the note but it also could not have legally transferred any of the rights in the mortgage.

34. Multiple court opinions in Maine that are consistent with court opinions across the country have recognized that these defects in this MERS contract as substantive failures, that are fatal to the legal ability to foreclose. Despite these fatal flaws in the MERS contract, multiple legal actions have been commenced against the Property Owner with

claims to these bundle of rights. According to Case Law in paragraph 30 all of the

Defendants lack the legal standing to bring foreclosure actions.

35. As mentioned in paragraph 30 MERS only held the right to record the mortgage. All

assignments of the mortgage to a new lender, only transfers the right to record the

mortgage. Any transfer of the rights to this mortgage would have to be conveyed directly

from the Original Lender and so on.

36. In this case the Original Lender has been defunct since 2008 making it impossible for any

new lender to ratify the original agreement. Any transfer of rights or any ratification of

the original agreement would have to been executed prior to Castle Point's demise.

37. Relief is sought to end this ongoing conflict, the Property Owner is seeking a court order

that includes a declaration of ownership, the Property Owner respectfully asks this

honorable Court to consider the standard set by the Maine foreclosure law that requires

proof of both the note and the mortgage. 14 M.R.S. § 6321 (2009) ("The mortgagee shall

certify proof of ownership of the mortgage note and produce evidence of the mortgage

note, mortgage and all assignments and endorsements of the mortgage note and

mortgage."). *see Bank of America, N.A. v. Greenleaf*, 2014 Me. 89, ¶¶ 9 - 12.

38. If evidence is or is not offered that can certify proof of ownership and possession of the

original mortgage note and from who it was acquired and the terms it was conveyed. The

Property Owner respectfully asks this honorable Court to still consider the standard set by

14 M.R.S. § 6321 and *Greenleaf*. Which requires both proof of the mortgage and the

note. In this case the interest in the mortgage lies with Castle Point the Original Lender.

39. The Property Owner prays this honorable Court finds the conditional conveyance

between Castle Point and the Property Owner to be null and void and cancel any interest

9

Castle Point holds leaving the Property Owner holding the land discharged from the mortgage *see* 14 M.R.S. § 6206 (2016) ("If it appears that nothing is due on the mortgage, judgment shall be rendered for the defendant and for his costs, and he shall hold the land discharged of the mortgage."). Considering the absence of Castle Point, the Property Owner respectfully asks the Court for a declaration stating that the Property Owner now holds the title to the South Paris property unencumbered by the mortgage in favor of Castle Point and bar Castle Point and all other Defendants from enforcing the mortgage and consequently the note.

40. August 13, 2010 FNME began an onslaught of court actions against the Property Owner including multiple foreclosures and various legal actions where FNME claims to be the holder of the note trying to claim rights to this title. These actions are a matter of record and now exacerbated by the risk of future court actions creates a lingering cloud on this title.

41. April 2, 2015 Ocwen Loan Servicing presented themselves to the Property Owner as the holder of the note and lien. The Property Owner had been under duress because of FNME's multiple foreclosure attempts since 2010. Ocwen presented a modification offer to the Property Owner as a chance to avoid another foreclosure. Ocwen Loan Servicing represented themselves has having the authority to conduct such a contract. However, in light of the evidence there is reason to question Ocwens conduct and to question if Ocwen had the legal authority to execute this contract *see* Ocwen Loan Servicing, LLC v. Redmon No. 73488-COA No. 74336-COA. Opinion in part: "When purchasing their home, respondents Philip and Patricia Redmon executed a deed of trust, which designated Mortgage Electronic Registration Systems, Inc. (MERS), as the beneficiary, acting as

10

nominee for their lender. The Redmons later defaulted and elected to participate in

Nevada's Foreclosure Mediation Program (FMP). Ocwen appeared at the mediation and

produced two assignments of the deed of trust to establish that it had been transferred

from MERS to Altisource. Ocwen also produced a pooling and servicing agreement and a

power of attorney to demonstrate that it was authorized to negotiate a loan modification

for Altisource. But the mediation ended unsuccessfully and, because the mediator found

that Ocwen failed to produce each assignment of the note and deed of trust, the FMP

administrator recommended that a foreclosure certificate not issue."

42. August 27, 2015 FNMA assigned the right to record this Mortgage to Ocwen six months

after the signing of the modification *see* Exhibit I.

43. FNMA adds to this confusion in 2017 when they again claim to hold the note two years

after Ocwen claimed to be the note holder. FNMA attempted to quiet the title and did not

name Ocwen in anyway in their pursuit to acquire the title.

44. February 1, 2019 PHH becomes the current servicer of this mortgage operating on behalf

of Ocwen Loan services. Ongoing collections without resolution continues to cloud the

title.

45. The Property Owner prays this honorable Court grants all rights of the real property to

favor the Property Owner and issue a declaration that the title to the real property is

vested in the favor of the Property Owner alone and that the defendants herein, and each

of them, be declared to have no estate, right, title or interest in the subject property and

that said Defendants, and each of them, be forever enjoined from asserting any estate,

right, title or interest in the subject property adverse to the Property Owner herein.

11

**WHEREFORE,** Plaintiff respectfully requests that this honorable Court find in Plaintiff's favor and against the Defendant(s), and set forth relief through and by Court Order encompassing but not limited to, the following:

        a. all assignment(s) of the mortgage in the Defendants names be removed from the Oxford County Registry of Deeds and anywhere else it may have been filed

        b. that Original Lender, all other Defendants and persons unknown be forever barred from claiming any right, title or interest superior to or distinct from the Plaintiff

        c. declare all rights of interest both equitable and legal, in full and unfractured, in favor of the Plaintiff

        d. for a declaration and determination that Plaintiff is the rightful holder of the note and the title to the property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said property

        e. for such other and further relief as this Court deems just and proper.

## COUNT II

### Equitable Relief

46. Plaintiff repeats and realleges the allegations contained in paragraph(s)1-45 as if more fully stated herein.

47. The Property Owner retains the equitable right of redemption and the right to possession. The Property Owner prays these Rights held by the Property Owner supersede any of the limited rights the remaining Defendants may hold and grant full legal title of the mortgage

and note in favor of the Plaintiff. Thus, extinguishing all other's claims, rights, and interests to the said title

48. Relief is sought and needed to help restore the Property Owner's right to safe and secure property. Lengthy and ongoing claims against the Property Owner's property has disallowed the Property Owner his right to live peacefully without constant fear of the numerous claims initiated against his property. The Property Owner seeks relief to help him restore his financial property and give the Property Owner the opportunity to restore his seriously damaged credit.

49. Property Owner respectfully asks this court to end the mortgage contract between Castle Point and the Property Owner and prevent all the Defendants from taking further action to claim this title.

50. FNMA's multiple court actions against the Property Owner have led to confusion and controversy. The foreclosure attempts and the attempt to get the tile are on the record, yet FNMA did not have the legal standing to bring these actions. The property Owner prays for relief and asks the Court to remove these actions from the record and/or offer a legal correction to the record and prevent FNMA from any future actions against this property and its owner.

51. Ocwen's modification is continuing to be a cause of question. The Property Owner respectfully ask this honorable Court to grant relief to settle this ongoing controversy.

52. PHH continues to hold the Property Owner's accruing debt that has reached a sum that has long surpassed the value of the property and has negatively affected the Property Owners credit. This debt aka loan was not issued to the Property Owner by PHH or by any other Defendant present in this case. An extraordinarily small to no financial

13

investment has been made on behalf of the Defendants. Based on this and based on the other facts in this case the Property Owner seeks relief.

53. The Property Owner has made several documented attempts including appeals to find a working solution with both Ocwen and PHH. All efforts by the Property Owner have been denied by both Ocwen and PHH. PHH claims the mortgage has been in default for over five years. PHH has not been actively involved in reaching a mutually beneficial solution with the Property Owner. Despite refusing all the Property Owners attempts at reaching a fair solution PHH still has not initiated a foreclosure action against the Property Owner. However, PHH holds an accruing debt that has reached an insurmountable level and is still growing for almost six years. PHH's choice not to foreclose has denied the Property Owner his right to good faith negotiations required by Maine's foreclosure process. PHH's refusal to foreclose also disallows the Property Owner his right to redemption. By PHH holding the accruing debt for a chronic period time makes it impossible to find a reasonable solution and makes it impossible for the Property Owner to seek redemption if ever in that position. Moreover, it denies the Property Owner his day in court to prove rightful ownership of the property. The Property Owner is now compelled to seek the jurisdiction of this honorable Court for relief and to quiet this title.

54. The history of this case is layered with bad faith conduct beginning with the signing of the original Mortgage with Castle Point. The Property Owner was under the belief he was entering to a contract with Castle Point only, within 3 days the Property Owners signature is on a contract with MERS and Castle Point was out of business within six months. Then *Saunders* 2010 ruling states MERS had no standing to foreclose. MERS hands FNME the

14

Mortgage and within a day of the *Saunders* ruling FNME filed its first foreclosure attempt against the Property Owner even though they had no more authority than MERS to do so. Then in 2015 after multiple Foreclosure attempts by FNME, Ocwen Loan Servicing conveniently offers a deal to help the Property Owner avoid another foreclosure attempt. This modification appears to be a strategy to circumvent the *Saunders* ruling and to correct the flaw in the mortgage. There are questions as to if Ocwen had the authority to enter such a contract and if the contract is legal. More questions arose in 2017 when FNME filed a court action to Quiet the title in their favor. FNMA claimed they were the note holder yet Ocwen claims to be the note holder and mortgage assignee. FNMA deliberately failed to inform the court of the mortgage assignment to Ocwen. In fact, FNME reported to the court that they were the one and only assignee of the mortgage. The Property Owner has made multiple documented attempts to negotiate with Ocwen and PHH to reach a solution and has been denied every time. Considering the evidence, it seems probable PHH does not have the authority to negotiate a legal modification. PHH continue to refuse good faith negotiations but continue to hold the accruing debt of the Property Owner. The evidence also reveals PHH and/or all other defendants do not have the legal standing to foreclose which leads to the conclusion this is probably why they have stopped trying. However, they continue to hold the massive accruing debt of the Property Owner.

55. The Property Owner prays this honorable Court through its authority grant relief to the Property Owner and settle this chronic controversy.

**WHEREFORE**, Plaintiff respectfully requests that this honorable Court find in Plaintiff's favor and against the Defendant(s), and set forth relief through and by Court Order encompassing but not limited to, as follows:

a. that judgment as prayed for be entered in favor of the Plaintiff, vesting the Plaintiff with full, complete, un splintered legal title to the Mortgage, free and clear of all senior claims, interest, or any persons claiming by, though, or under them, which judgment shall operate directly on the land and shall have the force of a release made by or on behalf of all of them of all claims inconsistent with the title established or declared thereby

b. void the mortgage agreement between Castle Point and the Property Owner

c. Defendants issue a satisfaction of lien or equivalent

d. remove MERS completely and bar them from this mortgage

e. stop PHH from collecting anything more on this mortgage and bar them from this mortgage

f. remove the court actions commenced by FNMA from the record or issue some type of correction to the record

g. bar all Defendants from taking any future action on this title

h. expunge all debt associated with this mortgage and subsequently stop enforcement of the note

i. defendants are to notify the credit bureau within 30 days to record the updated status of the Plaintiffs account

j. for such other and further relief as this Court deems just and proper.

16

## <u>Notice to Opposition</u>

In compliance with Rule 7 (1)(a) I hereby give Notice that matter in opposition to this motion pursuant to subdivision (c) of this rule must be filed not later than 21 days after the filing of this motion unless another time is provided by these Rules or set by the court.  Failure to file timely opposition will be deemed a waiver of all objections to the motion, which may be granted without further notice or hearing.

17



**EXHIBIT**
**A**

# CASTLE POINT
## MORTGAGE

Castle Point Mortgage, Inc.
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

| | | | |
|---|---|---|---|
| **STATE:** | Maine | **APPLICATION DATE:** | January 28, 2008 |
| **MORTGAGE TYPE:** | Conventional | **NAME:** | Kevin B Frost |
| **LIEN POSITION:** | First | | |
| **RATE TYPE:** | Fixed | **ADDRESS:** | 36 cobble hill rd |
| | | | Paris, ME  04281 |
| **LOAN PURPOSE:** | Cashout Refinance | | |
| **DATE PREPARED:** | February 15, 2008 | **DISCLOSURE TYPE:** | Redisclosure |
| **LOAN NUMBER:** | 3000135578 | | |

Thank you for allowing us to assist you in your financing needs.  If you have any questions on anything contained in this packet, please do not hesitate to call us.  Enclosed you will find 2 sets of the following documents:

Table of Contents
Federal Application Policy and Disclosure Notices
Credit Score Information Disclosure
RESPA Servicing Disclosure
1003 Uniform Residential Loan Application, page 1
1003 Uniform Residential Loan Application, page 2
1003 Uniform Residential Loan Application, page 3
Lock In/Financing Agreement
Good Faith Estimate, page 1
Good Faith Estimate, page 2
Maine Application Disclosure
Maine Notice of Borrower's Right to Select a Title Attorney
Maine Notice of Choice of Agent or Insurer
Good Faith Estimate Provider Relationship
Castle Point Mortgage Privacy Policy
Fair Lending Notice
Borrower's Authorization
Title Company Borrower Signature Authorization
Royal Settlement Services - Notice to Borrower
Truth in Lending

Please sign and return one set in the enclosed postage paid envelope to expedite the processing of your loan, and keep the other copy for your records.

***If at any time during the process you have questions regarding your loan, please call your loan officer, Karbassi Afshar at (800) 469-4850 Ext. 274.



**CASTLE POINT**
**MORTGAGE**

Castle Point Mortgage, Inc.
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850 Fax (800) 461-0346
www.castlepointmortgage.com

### FEDERAL APPLICATION POLICY AND DISCLOSURE NOTICES

| | | | |
|---|---|---|---|
| Date Prepared: | February 15, 2008 | Application Number: | 3000135578 |
| Borrower: | Kevin B Frost | Borrower: | |
| Property Address: | 36 cobble hill rd | Mailing Address: | 36 cobble hill rd |
| | SOUTH PARIS, ME  04281 | | Paris, ME  04281 |

### EQUAL CREDIT OPPORTUNITY ACT DISCLOSURE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning Castle Point Mortgage, Inc. is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC, 20580, (202) 724-1140.

Income which you receive as alimony, child support or separate maintenance payment, need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan.

Having made this disclosure to you, we are permitted to inquire if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan for which you are applying.

### NOTICE REGARDING YOUR UNIFORM RESIDENTIAL APPRAISAL REPORT

You are advised that you have the right, under the Equal Credit Opportunity Act, to obtain a copy of your residential appraisal report used in connection with your application for credit. If you would like a copy, please write to us at: Castle Point Mortgage, Inc., 6800 Deerpath Road, Suite 105, Elkridge, MD 21075. In your letter to us, please include your full name, property address, date of application, and loan number as stated on your application.

### FAIR CREDIT REPORTING ACT DISCLOSURE

In compliance with the Fair Credit Reporting Act, we are informing you that an investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of credit denial due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of your right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of the Fair Credit Reporting Act.

### FINANCIAL PRIVACY ACT DISCLOSURE

The Right to Financial Privacy Act requires that all applicants be informed of the purposes and uses to be made of the information that is solicited. The following is furnished to explain the purpose, use and effects of non disclosure for the information requested. <u>Purpose</u>: The information requested in the loan application is considered relevant to determine the worthiness for the loan applied. <u>Use</u>: The information gathered will be used in the evaluation of your loan application. <u>Effects of non disclosure</u>: Disclosure of the requested information is voluntary. Failure to provide information will not impose a penalty. However, the decision as to loan approval you are requesting must be made on the basis of the information supplied. This may result in a denial of credit, or delays in the processing of your application.

### REAL ESTATE SETTLEMENT PROCEDURES ACT DISCLOSURE

If you are applying for a purchase money loan, we are required to provide to you a Department of Housing and Urban Development guide entitled "Settlement Costs". By signing this disclosure, you are acknowledging receipt of the "Settlement Costs" booklet.

### FEDERAL RESERVE BOARD DISCLOSURE

If you are applying for an adjustable rate mortgage, we are required to provide you with a "Consumer Handbook on Adjustable Rate Mortgages" and an ARM disclosure. By signing this disclosure, you are acknowledging receipt of the CHARM booklet.

### BORROWER'S CERTIFICATION

I have applied for a mortgage loan from Castle Point Mortgage, Inc. (the "lender"). In applying for the loan I have completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I certify that all of the information is true and complete. *I made no misrepresentation in the loan application or other application or other documents, nor did I omit any pertinent information.*

I understand and agree that the Lender reserves the right to verify the information provided on the application with the employer and/or the financial institutions.

I fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement when applying for this mortgage, as applicable under the provisions of Title 18 US Code, Section 1014.

I specifically acknowledge and agree that the Lender, it's agents, successors and assigns, may report my name, account information, and other information regarding their credit experiences with me to other proper persons, such as credit reporting agencies and other lenders; and that the Lender, its agents, successors and assigns may release information about my loan, including my application and information obtained in connection with it, to affiliates and their agents so that I can be considered for other products and services offered by them.

*Federal Application Policy  Disclosure Notices.doc  Page 1 of 2*                     *Castle Point Mortgage, Inc.*

The Le____ will normally obtain credit reports for all loan applicati___ nd for updates, renewals, or extensions of any credit granted. Upon request, the Lender will inform you if a report has been obtained and will give you the name and address of the agency furnishing the report. I specifically authorize the Lender, its agents, successors and assigns and investors to whom the Lender may offer the mortgage to obtain and share said credit reports.

I specifically authorize the Lender, it successors, assigns and affiliates to request from time to time consumer reports on me from credit reporting agencies in order to determine my eligibility for additional product and/or service offerings; and any consumer reporting agency to provided from time to time consumer reports on me to the Lender, it's successors, assigns and affiliates so that I can be considered for additional product and/or service offerings. I will not be charged for these reports.

## AUTHORIZATION TO RELEASE INFORMATION

I/We have applied for a mortgage loan from Castle Point Mortgage, Inc. As part of the application process, Castle Point Mortgage, Inc. and the mortgage guaranty insurer may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

I/We authorize you to provide to Castle Point Mortgage, Inc. and to any investor to whom your mortgage may be sold or transferred to, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market and similar account balances; credit history; and copies of income tax returns.

Castle Point Mortgage, Inc. or any investor that purchases the mortgage may address this authorization to any party name in the loan application. A copy of this authorization may be accepted as an original.

## IMPORTANT PROCEDURES FOR OPENING A NEW ACCOUNT – PATRIOT ACT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account.

What this means for you: If you open an account (apply for a loan), we will ask for your name, address, taxpayer identification number, date of birth and other information that will allow us to identify you. Additionally, we will take certain steps to verify your identity, such as asking for your driver's license or other identifying documents or checking other sources. Similar identification requirements apply to non-personal accounts such as corporations and partnerships. Be assured that we recognize the importance of protecting your privacy and safeguarding the confidentiality of the information you provide to us.

## OTHER IMPORTANT INFORMATIONAL NOTICES

RESCISSION NOTICE – If you are refinancing your primary residence, you loan is subject to a three (3) business day Right of Rescission. Funds will not be disbursed until the fourth (4) business day after closing. Sundays and legal holidays are not counted in determining the rescission period.

ATTORNEY NOTICE – You have the right to employ an attorney of your choice licensed in the state that your property is located to represent you in this transaction.

PROPERTY INSURANCE – You may be required to obtain property insurance as a condition of receiving this loan. If property insurance is required, you may secure insurance from a company or agent of your own choosing. The minimum hazard insurance must equal the greater of:

1. 80% of the total property replacement cost as determined by your insurance agent; OR
2. total liens on the property, up to 100% of the total property replacement cost as determined by your insurance agent.

In addition, the deductible for the property insurance cannot exceed the greater of $1,000.00 or 1% of the policy amount.

CONDOMINIUM/PLANNED URBAN DEVELOPMENT INSURANCE – If you reside in a condominium or a PUD, you or your agent must provide us with at Master Hazard Policy.

FLOOD INSURANCE – You may be required to obtain flood insurance as a condition of receiving this loan. If it is determined that your property is located in a special flood hazard boundary area, you are required to obtain a flood insurance policy prior to closing. The minimum flood insurance must equal the lesser of:

1. total property replacement cost as determined by your insurance agent;
2. total liens on the property; OR
3. Federal Emergency Management Agency (FEMA) coverage limit of $250,000.

ESCROW ACCOUNTS – If your loan program does not escrow Taxes and Insurance, it will be your responsibility to pay all taxes, insurance premiums, water, sewer, ground rents and/or other assessments on the property listed as collateral on this loan since we will not escrow for this purpose.

IDENTIFICATION REQUIREMENTS: - At closing, all customers will be required to provide an unexpired, government issued, photo ID. For non US persons, this ID must be one of the following forms: 1. passport number and country of issuance; 2. alien identification card number; or 3. number and country of issuance of any other government issued documentation evidencing nationally or residence and bearing a photograph or similar safeguard.

**I/We do hereby certify that I/We have read, understand and acknowledge receipt of the Federal Application Policy and Disclosure Notices set forth above. I/We understand that these notices do not constitute a loan approval or that a loan approval will automatically be granted.**

|  | 02/15/08 |
|---|---|
| Kevin B Frost | Date |

|  | 02/15/08 |
|---|---|
|  | Date |

# NOTICE TO THE HOME LOAN APPLICANT
## CREDIT SCORE INFORMATION DISCLOSURE

| APPLICANT NAME AND ADDRESS | LENDER NAME AND ADDRESS (ORIGINATOR) |
|---|---|
| **Kevin B Frost**<br>36 cobble hill rd<br>**SOUTH PARIS, ME  04281** | **Castle Point Mortgage**<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075<br>(P) (800) 469-4850, (F) (800) 461-0346 |

In connection with your application for a home loan, Castle Point Mortgage, Inc. must disclose to you the score that a consumer reporting agency distributed, the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on the information a consumer reporting agency or lender has on file.  The scores are based on data about your credit history and payment patterns.  Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan.  They may also be used to determine what interest rate you may be offered on the mortgage.  Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit related information that is being furnished to make sure it is accurate.  Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice.  The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have any questions concerning the terms of the loan, contact the lender.

The consumer reporting agencies listed below provided a credit score that was used in connection with your home loan application.

| Consumer Reporting Agency #1 | Borrower Kevin B Frost | Factors: |
|---|---|---|
| Experian<br>PO Box 2002<br>Allen, TX 75013-0036<br>(P)888-397-3742<br><br>Module Used:<br>ExperianFairIsaac<br><br>Range of Possible Scores:<br>300 to 900 | Score: 684<br><br>Created: 1/23/2008 | 40 - DEROGATORY PUBLIC RECORD OR COLLECTION FILED;<br>14 - TEMP DESC;<br>33 - TEMP DESC;<br>08 - TOO MANY INQUIRIES LAST 12 MONTHS |
| **Consumer Reporting Agency #2** | Borrower Kevin B Frost | Factors: |
| Trans Union Corporation<br>PO Box 1000<br>Crum Lynne, PA 19022<br>(P)800-888-4213<br><br>Module Used:<br>TransUnionEmpirica<br><br>Range of Possible Scores:<br>300 to 900 | Score: 692<br><br>Created: 1/23/2008 | 40 - DEROGATORY PUBLIC RECORD OR COLLECTION FILED;<br>14 - TEMP DESC;<br>08 - TOO MANY INQUIRIES LAST 12 MONTHS;<br>06 - NUMBER OF FINANCE COMPANY ACCOUNTS |
| **Consumer Reporting Agency #3** | Borrower Kevin B Frost | Factors: |
| Equifax Credit Info Services<br>Atlanta, GA 30374-0241<br>(P)800-685-1111<br><br>Module Used:<br>EquifaxBeacon5.0 | Score: 672<br><br>Created: 1/23/2008 | 40 - DEROGATORY PUBLIC RECORD OR COLLECTION FILED;<br>14 - TEMP DESC;<br>06 - NUMBER OF FINANCE COMPANY ACCOUNTS;<br>08 - TOO MANY INQUIRIES LAST 12 MONTHS |

**RESPA SERVICING DISCLOSURE**

Lender: Castle Point Mortgage, Inc.

Loan Number : 3000135578

6800 De... .th Road, Suite 105, Elkridge, MD 21075

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHTS TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 USC §2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer practices and requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less that 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint resolution**

Section 6 of RESPA (12 USC §2605) gives you certain consumer rights, *whether or not your loan servicing is transferred*. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing transfer estimates**

1.  The following is the best estimate of what will happen to the servicing of your mortgage loan:
    [ ]  We may assign, sell or transfer the servicing of your loan while the loans is outstanding.
    [ ]  We are able to service your loan and (we) [ ] will [ ] (will not) [ ] (haven't decided whether to) service your loan.
        OR
    [X]  We do not service mortgage loans, [X] and we have not serviced mortgage loans in the past three years.
    [ ]  We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.
    [ ]  We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
            [ ]  sell all of the mortgage servicing  [ ] retain all of the mortgage servicing
            [ ]  assign, sell or transfer _____ % of the mortgage servicing

2.  For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:
        [ ] 0 to 25% or none  [ ] 26 to 50%  [ ] 51 to 75%  [X] 76 to 100% or all
    This estimate [X] does  [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.  [ ]  We have previously assigned, sold, or transferred the servicing of first lien mortgage loans.
        OR
    [X]  This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

    | Year | Percentage of Loans Transferred |
    |------|-------------------------------|
    |      | (Rounded to the nearest quartile -- 0%, 25%, 50%, 75% or 100%) |
    | 2005 | 100 % |
    | 2006 | 100 % |
    | 2007 | 100 % |

    This information [X] does  [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

February 15, 2008                                    Castle Point Mortgage, Inc.
Date                                                 Presenter Servicer or Lender

ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT
I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.

                                    02/15/08                                    02/15/08
Borrower  Kevin B Frost              Date    Borrower                            Date


Borrower                             Date    Borrower                            Date


Borrower                             Date    Borrower                            Date


Borrower                             Date    Borrower                            Date

Mortgage Cadence Inc. © 1092 – 02/06

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to applicable law and Borrower resides in a community property state, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____   Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for | [ ] VA    [X] Conventional   [ ] Other (explain): <br> [ ] FHA   [ ] USDA/Rural Housing Service | Agency Case Number | Lender Case Number <br> 3000135578 |
|---|---|---|---|

| Amount <br> $ 130,000.00 | Interest Rate <br> 5.500 % | No. of Months <br> 360 | Amortization Type: [X] Fixed Rate    [ ] Other (explain): <br> [ ] GPM    [ ] ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) <br> 36 cobble hill rd SOUTH PARIS, ME 04281 | No. of Units <br> 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built <br> 2002 |
|---|---|

Purpose of Loan  [ ] Purchase  [ ] Construction  [ ] Other (explain):    [X] Refinance  [ ] Construction-Permanent

Property will be: [X] Primary Residence  [ ] Secondary Residence  [ ] Investment

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | (a) Present Value of Lot <br> $ | (b) Cost of Improvements <br> $ | Total (a + b) <br> $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | Purpose of Refinance <br> Cash | Describe Improvements [ ] made  [ ] to be made <br> Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) <br> Kevin B Frost | Manner in which Title will be held | Estate will be held in: <br> [X] Fee Simple <br> [ ] Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) <br> Kevin B Frost | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number <br> 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 | Home Phone (incl. area code) <br> (207) 890-7061 | DOB (mm/dd/yyyy) <br> 6/23/1974 | Yrs.School <br> 12 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| [ ] Married  [X] Unmarried (include single, divorced, widowed) <br> [ ] Separated | Dependents (not listed by Co-Borrower) <br> no. 0   ages | [ ] Married  [ ] Unmarried (include single, divorced, widowed) <br> [ ] Separated | Dependents (not listed by Borrower) <br> no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [X] Own [ ] Rent  No. Yrs. 5 <br> 36 cobble hill rd <br> Paris, ME 04281 | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent  No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following

| Former Address (street, city, state, ZIP)  [ ] Own [ ] Rent  No. Yrs. | Former Address (street, city, state, ZIP)  [ ] Own [ ] Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer  [ ] Self Employed <br> Flagship Cinemas Inc <br> 746 Center St <br> Auburn, ME 04210 | Yrs. on this job <br> 3 yrs 5 months <br> Yrs. employed in this line of work/profession <br> 3.00 | Name & Address of Employer  [ ] Self Employed | Yrs. on this job <br> 0 months <br> Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business <br> General Manager | Business Phone (incl. area code) <br> (207) 7868890 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income <br> $ | | Monthly Income <br> $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income <br> $ | | Monthly Income <br> $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

3000135578

Freddie Mac Form 65  7/05 <br> Mortgage Cadence Inc. © 1087 – 02-06

Fannie Mae Form 1003  7/05

Kevin B Frost

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 2,446.73 | | $ 2,446.73 | Rent | | |
| Overtime | | | .00 | First Mortgage (P&I) | 891.00 | 738.13 |
| Bonuses | | | .00 | Other Financing (P&I) | | |
| Commissions | | | .00 | Hazard Insurance | 42.42 | 0.00 |
| Dividends/Interest | | | .00 | Real Estate Taxes | 151.98 | 0.00 |
| Net Rental Income | | | .00 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | .00 | | .00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 2,446.73 | $ | $ 2,446.73 | Total | 1,085.40 | $ 738.13 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income

Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ .00 | | | |
| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company TD BANKNORTH | $ Payment/Months 891.00 128 | $ *113,342.50 |
| Acct. no. | $ | Acct. no. 1001-0451 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CITIFINANCIA | $ Payment/Months 225.00 35 | $ 7,852.00 |
| Acct. no. | $ | Acct. no. 6071926547163022 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE | $ Payment/Months 10.00 2 | $ 15.00 |
| Acct. no. | $ | Acct. no. 1002-8086 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 165,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ .00 | |
| | | Total Monthly Payments | $ 235.00 | |
| Total Assets a. | $ 165,000.00 | Net Worth (a minus b) | $ 157,133.00 | Total Liabilities b. $ 7,867.00 |

3000135578

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1087 – 02/06

2 of 3

Fannie Mae Form 1003  7/05

## VI. ASSETS AND LIABILITIES

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Lien | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 36 cobble hill rd SOUTH PARIS, ME 04281 | SF | $165,000.00 | $113,342.50 | $ | $891.00 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $165,000.00 | $113,342.50 | $0.00 | $891.00 | $0.00 | $0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | 113,342.50 |
| e. | Estimated prepaid items | 287.97 |
| f. | Estimated closing costs | 4,871.50 |
| g. | PMI, MIP, Funding Fee | |
| h. | Discount (if Borrower will pay) | .00 |
| i. | Total costs (add items a through h) | 118,501.97 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 130,000.00 |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | 130,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -11,498.03 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | [ ] | [X] | [ ] | [ ] |
| b. Have you been declared bankrupt within the past 7 years? | [ ] | [X] | [ ] | [ ] |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [ ] | [X] | [ ] | [ ] |
| d. Are you a party to a lawsuit? | [ ] | [X] | [ ] | [ ] |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | | | |
| (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | [ ] | [X] | [ ] | [ ] |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes" give details as described in the preceding question. | [ ] | [X] | [ ] | [ ] |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | [ ] | [X] | [ ] | [ ] |
| h. Is any part of the down payment borrowed? | [ ] | [X] | [ ] | [ ] |
| i. Are you a co-maker or endorser on a note? | [ ] | [X] | [ ] | [ ] |
| j. Are you a U.S. citizen? | [X] | [ ] | [ ] | [ ] |
| k. Are you a permanent resident alien? | [ ] | [X] | [ ] | [ ] |
| l. Do you intend to occupy the property as your primary residence? | [X] | [ ] | [ ] | [ ] |
| If "Yes," complete question m below. | | | | |
| m. Have you had an ownership interest in a property in the last three years? | [X] | [ ] | [ ] | [ ] |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [X] I do not wish to furnish this information | CO-BORROWER | [ ] I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White | Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White |
| Sex: | [ ] Female   [ ] Male | Sex: | [ ] Female   [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Karbassi Afshar | Castle Point Mortgage, Inc |
| [ ] Face-to-face interview | Interviewer's Signature                Date | 6800 Deerpath Road, Suite 105 |
| [ ] Mail | | Elkridge, MD 21075 |
| [X] Telephone | Interviewer's Phone Number (incl. area code) | |
| [ ] Internet | (800)469-4850 | |



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

**LOCK-IN/FINANCING AGREEMENT**

Kevin B Frost,  (hereinafter referred to collectively as "Borrower") has/have made an application on January 28, 2008 with Castle Point Mortgage, Inc. ("CPM, Inc.") for a mortgage loan (the "loan") secured by the property located at 36 cobble hill rd SOUTH PARIS, ME 04281 ("Property").

Borrower seeks a mortgage loan on the terms set forth below ("Loan").  This Lock-In/Financing Agreement ("Agreement") sets forth the terms under which will afford the Borrower rate protection for the term of this Agreement. **This is not a commitment to make a loan or extend credit.   All loan terms not expressly locked in and set forth in this Agreement and any written supplements hereto, are subject to change at any time prior to settlement of the Loan.  At this time, there are no circumstances by which the Borrower will close at a lower rate.**

- **Terms applied for and loan conditions:**

|   |   |
|---|---|
| A. Loan Term (in months): | 360 |
| B. Principal Amount of Loan: | $130,000.00 |
| C. Type of Loan Program: | Conventional |
| D. Lien Position: | First |
| E. Rate Type: | Fixed |
| F. Loan Purpose: | Cashout Refinance |
| G. Monthly Payment (Principal & Interest): | $738.13 |
| H. Private Mortgage Insurance: | Not Required |
| I. Escrows for Real Estate Taxes & Insurance are: | Optional |

**In the event that the Borrower selects the Lock-In option, the Borrower and the Property fully qualify for the Loan and the Loan Application is approved, a loan under this Agreement shall be at the following rate and points (rates effective as of the date of this Agreement):**

| | | | | |
|---|---|---|---|---|
| A. Interest Rate: | 5.500% | | | |
| B. Borrower Points: | Loan Origination: | 1.625 | Loan Discount: | .00 |
| C. Seller Points (if applicable): | Loan Origination: | | Loan Discount: | |

D. Adjustable Rate (ARM) Terms (if applicable):

| | |
|---|---|
| % | Index |
| % | Margin |
| % | Maximum rate adjustment (cap) |
| % | Maximum interest rate adjustment at the end of the first adjustment period |
| % | Maximum adjustment each period after the first adjustment |
| | Month interval between adjustment periods |

**CPM, Inc. offers and Borrower elects ONE of the following THREE OPTIONS regarding their rate lock:**
   X **1. LOCKED IN - If Lock-In Option is selected, the following conditions apply:**
   This LOCK-IN Agreement expires on March 13, 2008.  In the event that the Loan does not close on or before that date, the rates and terms set forth in this option may change and CPM, Inc. will not be obligated to honor the terms quoted herein. THIS LOCK-IN provision is effective only if the Borrower executes this Agreement and returns the original to "CPM, Inc." within 7 days after the above initial application date.

   **LOCK-IN FEE.**  If this box is checked, you will be required to pay – at the time of initial application – a non-refundable Lock-In Fee in the amount of $0.00.  In the event that the Loan closes, the fee will be credited to any up-front costs which you will owe in connection with the loan, including loan discount and loan origination fees.

   **If the Loan does not close because you withdraw your application or supply incomplete or incorrect information, then the Lock-in Fee will be deemed to be earned by CPM, Inc., and will not be refunded, in whole or in part, to you.  If the loan does not close before the expiration date of the agreement through no *substantial fault of the Borrower or CPM, Inc.* rejects your Loan application, CPM, Inc. will promptly refund to the Borrower any lock-in fee paid by the borrower.**

Please acknowledge Page 1 of the Lock In/Financing Agreement by initialing below:

_____        _____        _____
Kevin B Frost                                                                                           Jeffrey Buckley

*Lock-In/Financing Agreement.doc*          *Page 1 of 3*          *Castle Point Mortgage, Inc.*
**Revised 6/22/2006**

**2. FL□□□□□ING - If Floating option is selected, the following □□□□litions apply:**
The rate applicable to the Loan in the event that Borrower and the property fully qualify for the Loan and the Loan application is approved shall be the market rate on the date of closing. Rates provided for any given loan program are subject to change, and in fact do change, on a daily basis.

**3. FLOAT TO LOCK - If Float to Lock option is selected, the following conditions apply:**
If you select this option, your rate and points will float in accordance with the "FLOATING" option above, until closing, unless you affirmatively act to lock in the interest rate by carefully following the procedure described herein. You may request that the interest rate and points be locked in under this option by sending a fax request, which includes your name, loan number, property address and statement indicating you wish to lock your interest rate in at today's rate to the following facsimile number: (973) 206-0881. Within 24 hours of receipt of your request, CPM, Inc. will lock in your rate and mail you an updated Agreement confirming your loan terms for a specific lock in period. It is your responsibility to call your loan officer 1 day after sending your fax to CPM, Inc., to confirm receipt of the fax and your lock in terms.

**ADDITIONAL INFORMATION:**

There are other fees and charges associated with the Loan application, processing and closing of the Loan that are not reflected in this Agreement. These fees and charges are approximated in the Good Faith Estimate of Closing Costs, which is required to be supplied to you under federal law.

At the time of the execution of this Agreement, you agree to pay a fee of $350.00 for an appraisal report. This fee is **NON-REFUNDABLE** regardless of whether the mortgage loan is approved, declined, withdrawn, or closed for incompleteness. This fee is separate and distinct from any and all fees due in the event a mortgage loan is procured.

In accordance with Maine law, CPM, Inc. will make a good faith effort to process the mortgage loan application as expeditiously as possible and stand ready to fulfill the terms of its Lock-In/Financing Agreement before the expiration date of the Agreement or any extension thereof. A good faith estimate of the time necessary to process the closing of your loan (taking into account the time needed for the performance of any local government inspections and any functions necessary to close the loan) is between 20 and 30 days.

The actual time necessary to process and close your loan may vary from the estimate due to certain situations that are unknown at this time. Some of these situations include, but are not limited to, the following:

    a.  the security property is insufficient in value to act as security for the repayment of your loan;
    b.  credit obligations that you failed to report;
    c.  a change in your financial circumstances resulting in your ineligibility for the loan for which you applied;
    d.  a material change or discontinuation of a loan program of an investor or another entity; or
    e.  a delay in CPM, Inc. receiving information from you or from others.

CPM, Inc. is not responsible for delays caused by third party providers of services required as a prerequisite to the making of the Loan (such as appraisers, credit bureaus, escrow and title companies, surveyors, and persons requested to supply income, employment and payment history information). CPM, Inc. cannot be responsible for delays caused by persons or circumstances beyond CPM, Inc.'s control which may result in the Lock-in (rate protection) under this Agreement to expire.

Any Agreement received by the lender by mail or through a broker must be signed by the lender in order to become effective. The borrower may rescind any Agreement until a written confirmation of the agreement has been signed by the lender and mailed to the borrower or to the brokerage business pursuant to its contractual relationship with the borrower. If borrower elects to rescind, the lender must promptly refund any lock-in fee paid.

This Agreement, and performance hereunder, shall be interpreted under and governed by the laws of Maine and no modification or addition to this Agreement may be made except in writing, executed by both parties. This Agreement is enforceable by Borrower and Lender.

**This is not a commitment to make a loan or extend credit. The terms herein are expressly contingent upon the Borrower and the Property fully qualifying under the loan program selected, or qualifying with the lender or investor to which the Loan application is provided, the approval of the Loan application by CPM, Inc. and any investor or subsequent assignee of the Loan, and the Borrower's fulfilling all of the requirements imposed by CPM, Inc. or investor, or the lender's agents, as prerequisites to making the loan.**

Please acknowledge Page 2 of the Lock In/Financing Agreement by initialing below:

_____    _____    _____
Kevin B Frost                                             Jeffrey Buckley

CPM, Inc. cannot guarantee the Borrower's acceptance by any particular loan program and is not responsible for any failure to approve or close a loan or the Loan to which this Agreement is applicable, if the reason for such failure is attributable to any cause other than conduct by which violates state or federal law applicable to the Loan. If information supplied by the Borrower or any third party in connection with the Loan application is discovered to be materially false or misleading, this Agreement shall be void, and any lock in fee shall be deemed earned and non refundable to the borrower.

This Agreement represents the entire Agreement between the parties hereto regarding rate protection. Any modification hereto or supplementary lock-in must be in writing and signed by both parties. **CPM, Inc. will NOT honor verbal statements or commitments different or in addition to the terms set forth in this Lock-In Agreement.**

**No Documentation/Limited Documentation Loan**

If the loan applied for is a "Limited Documentation" or "No Income Verification" Loan, CPM, Inc. reserves the right to change the mortgage loan process to a "Full Documentation" loan application where required or advisable. "Full Documentation" may require verifying information with employer(s), financial institutions and lenders.

**Tasks the Borrower Must Perform Prior to Closing**

We must receive and approve of all items requested during the loan process. Such information includes stipulations that will be requested from you during the process, and possibly at closing.

You will be required to pay all permitted closing costs including but not limited to title insurance costs, all recording costs, lender's attorney fee(s), and mortgage tax.

You must provide us with clear and marketable title to the property given to secure this loan. Any outstanding title judgments must be paid from the proceeds of this loan or out of your own funds prior to closing. Proof of payoff must be provided to us prior to the disbursement of funds.

You must obtain a one (1) year Homeowners Hazard insurance policy covering the subject property, and naming CPM, Inc. (mortgagee) as an additional named insured. The premium for the hazard insurance policy must be paid in advance. If the property is a condominium, CPM Inc. requires a certificate to the Master insurance policy.

All legal matters relative to this transaction must meet with the approval of the lender's attorney or title company.

This Agreement shall be null and void if any information in your application is incorrect or cannot be verified by us, or if there is any change in your financial condition, the property, or any other circumstances which adversely affects the secured property or your ability to repay the loan.

I/We, the undersigned, have read and fully understand the terms of this Lock-in/Financing Agreement and agree to all terms hereof, and hereby acknowledge receipt of a copy of this Agreement, fully filled out and executed within 10 days after my initial loan application.

| | 02/15/08 |
|---|---|
| Kevin B Frost | Date |
| | 02/15/08 |
| | Date |
| | 02/15/08 |
| Jeffrey Buckley<br>Authorized Castle Point Mortgage Representative | Date |

Good Faith Estimate of Settlement Charges

Prepared By:   Ca_ _ Point Mortgage, Inc.                                    Loan Number: ___3000135578

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the
actual charges may be more or less.  Your transaction may not involve a fee for every item listed.
The numbers listed beside the lines contained in the HUD-1 A settlement statement that you will be receiving at settlement.
The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

## Estimated Settlement Charges

| | POC | BORROWER | SELLER | LENDER |
|---|---|---|---|---|
| **800:  Items Payable In Connection with the Loan:** | | | | |
| 801:  Loan Origination Fee ___1.625e___ % of loan | | 2,112.50e | | |
| 802:  Loan Discount _____ % of loan | | | | |
| 803:  Appraisal Fee | 350.00 | | | |
| 804:  Credit Report | | 15.00e | | |
| 805:  Inspection Fee | | | | |
| 806:  Mtg Ins Application Fee | | | | |
| 807:  Assumption Fee | | | | |
| 808: | | | | |
| 809:  Processing  Fee | | 795.00e | | |
| 810:  Underwriting  Fee | | 595.00e | | |
| 811:  CLO  Fee | | | | 800.00e |
| 812: | | | | |
| 813: | | | | |
| 814: | | | | |
| 815: | | | | |
| 816: | | | | |
| 817: | | | | |
| 818: | | | | |
| **900:  Items Required By Lender To Be Paid In Advance:** | | | | |
| 901:  Per diem Interest for __8__ days @ __19.59__ per day | | 156.72e | | |
| 902:  Mortgage Insurance Premium | | | | |
| 903:  Hazard Insurance Premium for 1 year | | 131.25e | | |
| 904: | | | | |
| 905: | | | | |
| 906: | | | | |
| 907: | | | | |
| 908: | | | | |
| **1000: Reserves Deposited With Lender** | | | | |
| 1001: Hazard Insurance ____ months @ ____.00____ per month | | | | |
| 1002: Mortgage Insurance ____ months @ _____ per month | | | | |
| 1003: City Property Taxes ____ months @ _____ per month | | | | |
| 1004: County Property Taxes ____ months @ ____.00____ per month | | | | |
| 1005: Annual Assessments ____ months @ _____ per month | | | | |
| 1006: ____ months @ _____ per month | | | | |
| 1007: ____ months @ _____ per month | | | | |
| 1008: Aggregate Adjustment | | | | |
| **1100: Title Charges:** | | | | |
| 1101: Settlement or Closing Fee | | 795.00e | | |
| 1102: Abstract or Title Search | | 195.00e | | |
| 1103: Title Examination | | | | |
| 1104: Title Insurance Binder | | | | |
| 1105: Document Preparation | | | | |
| 1106: Notary Fees | | | | |
| 1107: Attorneys' Fees | | 195.00e | | |
| 1108: Title Insurance | | | | |
| 1109: Lender's Coverage | | | | |
| 1110: Owner's Coverage | | | | |
| 1111: Bringdown | | 55.00e | | |
| 1112: | | | | |
| 1113: | | | | |
| **1200: Government Recording and Transfer Charges:** | | | | |
| 1201: Recording Fees, Deed, Release | | 44.00e | | |
| 1202: City/County Tax/Stamps, Deed, Mortgage | | | | |
| 1203: State Tax/Stamps, Deed, Mortgage | | | | |
| 1204: | | | | |
| 1205: | | | | |

Mortgage Cadence Inc. © 1534 - 02/06                                   1 of 2

**1300: Additional Settle    Charges:**

| | POC | BORROWER | SELLER | LENDER |
|---|---|---|---|---|
| 1301: Survey | | | | |
| 1302: Pest Inspection | | | | |
| 1303: Tax Cert Fee | | 35.00e | | |
| 1304: | | | | |
| 1305: | | | | |
| 1306: Recording/Release Tracking Fee | | 35.00e | | |
| 1307: | | | | |
| **Total Settlement Costs:** | | * 5,159.47e | | 800.00e |

For some of the estimated charges for settlement services above, the use of particular providers of services is required. The estimates are based on charges of the provider. Refer to the separate Provider of Services Addendum disclosure for more information. If the lender will choose a provider from a list of 5 or more service providers, an estimate of the range of the minimum and maximum dollar cost of the charge to be incurred is shown on the separate Addendum.

**\*\*\* The Lender may have requirements for additional monthly Payment reserves. This might require additional liquid assets to be readily available.\*\*\***

These estimates are provided pursuant to the Real Estate Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

The Undersigned acknowledges receipt of the booklet 'Buying Your Home - Settlement Costs and Helpful Information,' and the Consumer Handbook on ARM Mortgage, if applicable. I understand the amounts indicated above are ESTIMATES ONLY and may vary from the actual settlement charges at closing. Also I understand that the loan origination fee, interest rate, loan term, and monthly payment indicated herein are based on my application and may be subject to change. If for any reason the loan for which I have applied does not close, I agree to reimburse the Lender for any and all costs incurred to process my application including, but not limited to, the appraisal and credit reports.

| | 02/15/08 | | 02/15/08 |
|---|---|---|---|
| Applicant  **Kevin B Frost** | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

Date of this estimate:  January 28, 2008          By:

This Good Faith Estimate is being provided by Castle Point Mortgage, Inc.

## Monthly Payment Analysis

| | |
|---|---|
| Principal and Interest | 738.13 |
| Property Taxes | .00 |
| Hazard Insurance | .00 |
| Mortgage Insurance | |
| HOA Dues | |
| Other | |
| Estimated Payment | 738.13 |

## Program Information

| | |
|---|---|
| Sales Price/Value | |
| Req. Loan Amount | 130,000.00 |
| Type of Loan | Conventional |
| Interest Rate | 5.500 |
| Loan Term | 360 |
| Loan Amortization | Fixed |

Total Estimated Funds Needed to Close this Loan

| | |
|---|---|
| Estimated Closing Costs: | $4,871.50 |
| Estimated Prepaid Items: | $287.97 |
| Total Settlement Costs: | $5,159.47 |
| Funds To/From Borrower: | -$11,498.03 |



Castle Point Mortgage, Inc.
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

### MAINE APPLICATION DISCLOSURE

| | | | |
|---|---|---|---|
| Prepared by: | Castle Point Mortgage, Inc.<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075 | Applicant(s): | Kevin B Frost |
| | | Property Address: | 36 cobble hill rd<br>SOUTH PARIS, ME<br>04281 |
| Date Prepared: | February 15, 2008 | Loan Number: | 3000135578 |

Pursuant to applicable Maine law, the above-named lender is required to make the following disclosure in writing to mortgage loan applicant(s) ("you" and "your").

**APPLICANT AUTHORIZATION AND REPRESENTATION:**
I/We hereby apply for the loan or credit described in our application. I certify that I made no misrepresentations in the loan application or in any related documents, that all information is true and complete, and that I did not omit any important information. I agree that any property securing the loan or credit will not be used for any illegal or restricted purpose. Castle Point Mortgage, Inc. is authorized to make any investigation of my credit and employment status, either directly or through any agency employed by Castle Point Mortgage, Inc. for that purpose. Castle Point Mortgage, Inc. may disclose to any other interested parties it experience with my account, any reasons for any adverse action, and any other information Castle Point Mortgage, Inc. may have about me. I understand that Castle Point Mortgage, Inc. will retain the application and any other credit information it receives, even if no loan or credit is granted. These representations and authorizations extend not only to Castle Point Mortgage, Inc., but also to any insurer of the loan and to any investor to whom Castle Point Mortgage, Inc. may sell all or any part of the loan. I further authorize Castle Point Mortgage, Inc. to provide to any such insurer or investor your information and documentation that they may request with respect to my application, credit or loan.

I fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts on the application as applicable under the provisions of Title 18, United States Code, Section 1014.

If you have any questions regarding your application or this agreement, please contact us at:

**CASTLE POINT MORTGAGE, INC.**
**6800 DEERPATH ROAD, SUITE 105**
**ELKRIDGE, MD 21075**
**(800) 469-4850**

### ACKNOWLEDGMENT

I/We, the undersigned, have read and fully understand the terms of the Maine Application Disclosure, and hereby acknowledge receipt of a copy of this Agreement, as indicated by my/our signatures below.

_____     02/15/08
Kevin B Frost                          Date

_____     02/15/08
                                       Date

_____     02/15/08
Jeffrey Buckley                        Date
Authorized Castle Point Mortgage Representative



Castle Point Mortgage, Inc.
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

## MAINE NOTICE OF BORROWER'S RIGHT TO SELECT A TITLE ATTORNEY

| | | | |
|---|---|---|---|
| Prepared by: | Castle Point Mortgage, Inc.<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075 | Applicant(s): | Kevin B Frost |
| | | Property Address: | 36 cobble hill rd<br>SOUTH PARIS, ME<br>04281 |
| Date Prepared: | February 15, 2008 | Loan Number: | 3000135578 |

You have applied for a mortgage loan from Castle Point Mortgage, Inc. You will be required to provide Castle Point Mortgage, Inc, at your expense, a title insurance policy to protect Castle Point Mortgage, Inc's interest in the Property.

Maine law requires that you be informed of the following:

1. You have the right to select a qualified attorney of your choice to perform the title work.

2. If the attorney chosen by you meets Castle Point Mortgage, Inc's reasonable requirements, you may not be charged any additional fees by Castle Point Mortgage, Inc for review of the title work.

3. If you indicate that you do not wish to exercise your right to select an attorney, then Castle Point Mortgage, Inc may recommend one to you. (Check one):

   ☐  I/We do not wish to exercise my/our right to select an attorney to perform title work.

   ☐  I/We wish to exercise my/our right to select the attorney identified below to perform title work:

   Name: _____
   Attorney's Name

   Address: _____
   Attorney's Address

   Phone: _____
   Attorney's Phone Number

### ACKNOWLEDGEMENT

I/We, the undersigned, have read and fully understand the Maine Notice of Borrower's Right to Select a Title Attorney, and hereby acknowledge receipt of a copy of this Disclosure, as indicated by my/our signatures below. This disclosure is neither a contract nor a commitment to lend.

_____    02/15/08
Kevin B Frost                                 Date

_____    02/15/08
                                              Date

_____    02/15/08
Jeffrey Buckley                               Date
Authorized Castle Point Mortgage Representative



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

## MAINE NOTICE OF CHOICE OF AGENT OR INSURER

Prepared by:      Castle Point Mortgage, Inc.
6800 Deerpath Road, Suite 105
Elkridge, MD 21075

Applicant(s):      Kevin B Frost

Property Address:      36 cobble hill rd
SOUTH PARIS, ME
04281

Date Prepared:      February 15, 2008

Loan Number:      3000135578

You have applied for a mortgage loan on your home from Castle Point Mortgage, Inc. In connection with this loan, Castle Point Mortgage, Inc will require you to obtain Hazard, Title and/or Flood Insurance coverage

Maine law requires that you be informed that you have the right of free choice in the selection of the agent and insurer through or by which any insurance in connection with the loan is to be placed. You are not required to choose an agent or broker that is affiliated with us. Obtaining insurance products from a particular agent or broker does not affect our credit decisions, unless the insurance product selected violates the terms of your loan regarding adequacy of coverage or the insurer is not approved by us on a reasonable nondiscriminatory basis related to the solvency and assessment policies of the insurer and its ability to service the policy. You will be required to obtain the following insurance:

1. **Hazard and Flood Insurance:** You will be required to obtain, at your expense, hazard insurance for the real property securing repayment of your loan in accordance with the requirements of your loan documents. If the real property securing repayment of your loan is in a special flood hazard area, you will also be required to obtain, at your expense, flood insurance.

2. **Title Insurance:** You will be required to pay for a lender's policy of title insurance in connection with your loan. You may select the title insurance company of your choice. You are not required to choose an agent or broker that is affiliated with us. Your choice will not affect our credit decision. Please indicate your choice below:

   ☐   I/We do not wish to exercise my/our right to select an agent to provide a lender's title policy.

   ☐   I/We wish to exercise my/our right to select the agent identified below to issue a lender's title policy:

   Name: _____
                          *Agent's Name*

   Address: _____
                          *Agent's Address*

   Phone: _____
                          *Agent's Phone Number*

### FAILURE TO OBTAIN A POLICY OR BINDER WILL DELAY YOUR LOAN CLOSING.

### ACKNOWLEDGEMENT

☐I/We, the undersigned, have read and fully understand the Maine Notice of Choice of Agent or Insurer, and hereby acknowledge receipt of a copy of this Disclosure, as indicated by my/our signatures below. This disclosure *is neither a contract nor a commitment to lend.*

                                              02/15/08
_____    _____
Kevin B Frost                                      Date

                                              02/15/08
_____    _____
                                               Date

                                              02/15/08
_____    _____
Jeffrey Buckley                                  Date
Authorized Castle Point Mortgage Representative



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Prepared By:      Castle Point Mortgage, Inc.        Applicant(s):        Kevin B Frost
                  6800 Deerpath Road, Suite 105
                  Elkridge, MD 21075

                                                     Property Address:    36 cobble hill rd
                                                                          SOUTH PARIS, ME  04281

Date Prepared:    February 15, 2008                  Loan Number:         3000135578

Certain portions of the estimated settlement fees reflected on the Good Faith Estimate of settlement charges will be paid to particular providers that you are required to use. To the extent that the information is available at the time of this disclosure, the following is a list of the names, addresses, and telephone numbers of the providers that you are required to use in connection with your loan. This disclosure is made in accordance with section 3500.7(e) of the Real Estate Settlement Procedures Act. Within the last 12 months, Castle Point Mortgage, Inc. has repeatedly used or required borrowers to use the services of the following providers:

| CREDIT REPORTING AND FLOOD CERTIFICATION: | |
|---|---|
| CBC Companies<br>Hanover, MD 21076<br>7502 Connelley Drive, Suite 106-108<br>(800) 487-1227 | Land America Financial Group, Inc.<br>101 Gateway Centre Parkway<br>Richmond, VA 23235<br>(800) 446-7086 |
| **TITLE & SETTLEMENT SERVICES:** | |
| Royal Settlement Services, Inc<br>6800 Deerpath Road, Ste 110<br>Elkridge, MD  21075<br>(800) 591-1099 | Lending Tree Settlement Services<br>12735 Grand Bay Parkway West – Suite 2000<br>Jacksonville, FL 32258<br>(866) 633-5877 |
| Closing USA<br>250 Mile Crossing Blvd, Suite 4<br>Rochester, NY 14624<br>(585) 454-1730 | |
| **MORTGAGE INSURANCE:** | |
| Genworth Financial<br>1039 Sterling Virginia Road, Suite 203<br>Herndon, VA 20170<br>(800) 336-3756 | |
| **APPRAISALS:** | |
| The Jordan Real Estate Group<br>1191 E. Newport Cntr Dr.<br>Deerfield Beach, FL 33442<br>(954) 429-9952 | Royal Settlement Services, Inc.<br>6800 Deerpath Road, Ste 110<br>Elkridge, MD  21075<br>(800) 591-1099 |

Royal Settlement Services, Inc. is an affiliate of Castle Point Mortgage, Inc., please reference the Affiliated Business Arrangement Disclosure for more information on this relationship.

_____          02/15/08
Kevin B Frost                                              Date

_____          02/15/08
                                                           Date

# CASTLE POINT
## MORTGAGE

Castle Point Mortgage, Inc.
6801 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850 Fax (800) 461-0346
www.castlepointmortgage.com

## IMPORTANT INFORMATION ABOUT YOUR PRIVACY

### WE ARE COMMITTED TO SAFEGUARDING CUSTOMER INFORMATION

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. We have adopted this Privacy Policy to govern the use and handling of your personal information.

### APPLICABILITY

This privacy policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### TYPES OF INFORMATION

Depending upon which of our services you are utilizing, the types of non-public information personal information that we may collect include:

- Information we receive from you on applications, forms, and in other communications to us, whether in person, by telephone or any other means;
- Information about your transactions with us or others; and
- Information we receive from a consumer reporting agency.

### USE OF INFORMATION

We request information from you for our own legitimate business purposes and not for the benefit of any non-affiliated party. Therefore, we will not release your information to non-affiliated parties except:

1) as necessary for us to provide the product or service you have requested of us;
2) with third party lenders, wholesale lenders or investors, who have a relationship with us to acquire mortgage products that meet your specific needs; or
3) as permitted by law.

We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as equality control efforts or customer analysis and to track generic statistical information.

We will not disclose information about you to anyone except as disclosed in this policy or as permitted by law. Examples of this might include disclosures necessary to service your account, prevent unauthorized transactions or in response to legal process.

### FORMER CUSTOMERS

Even if you are no longer our customer, our privacy policy will continue to apply to you.

### CONFIDENTIALITY AND SECURITY

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to non-public personal information about you to those individuals and entities who need to know that information to provide products and services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your non-public personal information.

### CONTACT US

If you have questions or complaints regarding our privacy policy or use of your information, please contact us by mail at:

Jeffrey Buckley, Privacy Officer
Castle Point Mortgage
7 Entin Road
Parsippany, NJ 07054



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

## THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977
### FAIR LENDING NOTICE

It is illegal to discriminate in the provisions of or in the availability of financial assistance because of the consideration of:

1.  Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe and unsound business practice; or
2.  Race, color, religion, sex, martial status, national origin or ancestry.

It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of a one-to-four unit residence occupied by the owner and for the purpose of the home improvement of any one-to-four unit family residence.

If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution or the agency noted below:

**Office of Fair Housing and Equal Opportunity**
**U.S. Department of Housing and Urban Development**
**Room 5204**
**451 Seventh Street SW**
**Washington, DC  20410-2000**

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Date:  **January 28, 2008**

Lender:  **Castle Point Mortgage, Inc.**

Borrower(s): **Kevin B Frost,**

Property Address: **36 cobble hill rd**
**SOUTH PARIS, ME 04281**

[X] Preliminary  [ ] Final

Loan No:  **3000135578**

Loan Type: **First Mortgage**
**Conventional**
**Fixed**
**5.500**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled. |
| 5.8235e | 140,407.09e | 125,315.78e | 265,722.87e |

**Payments:** Your payment schedule will be:

| Number of Payments | Monthly Payments of | Payments are Due Monthly Beginning | Number of Payments | Monthly Payments of | Payments are Due Monthly Beginning |
|---|---|---|---|---|---|
| 359e | 738.13e | April 01, 2008e | | | |
| 1e | 734.20e | March 01, 2038e | | | |

**DEMAND FEATURE:**  [ ] This loan has a demand feature
**VARIABLE RATE:**  [ ] Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving security interest in the property located at: 36 cobble hill rd SOUTH PARIS, ME 04281

**FILING / RECORDING FEES: $ 44.00e**

**LATE CHARGES:** If your payment is more than 15 days late, you will be charged a late charge of **5.000** % of the overdue payment.

**PROPERTY INSURANCE:** [X] Property hazard insurance in the amount of $ **130,000.00e** with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender. Hazard Insurance [ ] is [X] is not available through the lender at an estimated cost $ _____ annually.

**ASSUMPTION :** Someone buying this property [X] cannot assume the remaining balance due under original mortgage terms
[ ] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**PREPAYMENT:** If you pay off your loan early, you
[ ] may  [X] will not   have to pay a penalty.
[ ] may  [X] will not   be entitled to a refund of part of the finance charge.

**See your loan documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.**

**\*e means estimate**
I/We acknowledge receipt of a complete copy of this disclosure. This is neither a contract nor a commitment to lend.

02/15/08                                                                    02/15/08

| Borrower **Kevin B Frost** | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Mortgage Cadence Inc. © -1533 02/06

EXHIBIT

**B**



# MAINE
## Department of the Secretary of State
### Bureau of Corporations, Elections and Commissions

Corporate Name Search

## Information Summary

Subscriber activity report

**This record contains information from the CEC database and is accurate as of: Sat Jan 09 2021 08:48:01. Please print or save for your records.**

| Legal Name | Charter Number | Filing Type | Status |
|---|---|---|---|
| CASTLE POINT MORTGAGE, INC. | 20070486 F | BUSINESS CORPORATION (FOREIGN) | AUTHORITY OF FOREIGN ENTITY WITHDRAWN |

| Filing Date | Expiration Date | Jurisdiction |
|---|---|---|
| 11/28/2006 | N/A | MARYLAND |

**Other Names** (A=Assumed ; F=Former)

NONE

**Clerk/Registered Agent**

NATIONAL REGISTERED AGENTS, INC.
P.O. BOX 509
READFIELD, ME 04355

[Back to previous screen]   [New Search]

## Click on a link to obtain additional information.

List of Filings                    View list of filings

**Obtain additional information:**

Additional Addresses               Plain Copy.      Certified copy.

You will need Adobe Acrobat version 3.0 or higher in order to view PDF files.
If you encounter problems, visit the troubleshooting page.



If you encounter technical difficulties while using these services, please contact the Webmaster. If you are unable to find the information you need through the resources provided on this web site, please contact the Bureau's Reporting and Information Section at 207-624-7752 or e-mail or visit our Feedback page.

© Department of the Secretary of State



# MAINE
## Department of the Secretary of State
### Bureau of Corporations, Elections and Commissions

Corporate Name Search

## List of All Filings

**CASTLE POINT MORTGAGE, INC.**

Please check one of the following
☐ All documents
☐ Articles and amendments only
☐ Specific records
Select from the list below.

**Note: If you are selecting "All Documents" or "Articles and Amendments Only" and any of the filings below have "order" next to the checkbox, you must order these copies from the Bureau. See further instructions below.**

Each record $ 3.00
☐ Certify order $5.00

| Description | Date | Image Available | |
|---|---|---|---|
| FOREIGN QUALIFICATION | 11/28/2006 | Yes | ☐ |
| ANNUAL REPORT | 03/28/2007 | Yes | ☐ |
| ANNUAL | 05/29/2008 | Yes | ☐ |

REPORT

APPLICATION
OF
WITHDRAWAL          07/02/2008          Yes
BY FOREIGN
ENTITY

☐

[ Download Available Images ]

If the word "order" appears next to the order checkbox above, it means the image is not available to download. However, you may order these copies from the Bureau by checking the checkboxes you would like to request, then by clicking the "Order from Bureau" button above. Once you complete and submit the order form, the Bureau staff will process your request within 5 to 7 business days. The fee for copies from the Bureau is $2.00 per page and if certified copies are requested, an additional $5.00 for each certification.

[ Cancel ]

You will need Adobe Acrobat version 3.0 or higher in order to view PDF files.
If you encounter problems, visit the troubleshooting page.



If you encounter technical difficulties while using these services, please contact the Webmaster. If you are unable to find the information you need through the resources provided on this web site, please contact the Bureau's Reporting and Information Section at 207-624-7752 or e-mail or visit our Feedback page.

© Department of the Secretary of State

Register Your Business Online | Maryland.gov



**MARYLAND.GOV**                              ⫶ 24/7 Support    ⫶ More Online Services    ⫶ ⏍ Maryland.gov SECURED ⫶

**MARYLAND BUSINESS*EXPRESS***

☐ **Maryland Business Express**

| ☐ Home | ☐ Log In / Create Account |
| --- | --- |

☐ **Your Progress**

☐  **Scheduled Maintenance**                                         ☐

☐ Business Entity Search

☐ **General Information**

# Business Entity Search, Certificate of Status & Document Order

☐ Document Order

☐ Contact Information

## CASTLE POINT MORTGAGE, INC.: D06715569          Order Documents

☐ Review Order

☐ Payment

☐ Payment Complete

General Information     Filing History     Personal Property

☐ **Support**

## General Information

| | |
| --- | --- |
| **Department ID Number:** | D06715569 |
| **Business Name:** | CASTLE POINT MORTGAGE, INC. |
| **Principal Office:** | 6800 DEERPATH ROAD<br>SUITE 105<br>ELKRIDGE MD 21075 |
| **Resident Agent:** | NO ACTIVE RESIDENT AGENT FOUND |
| **Status:** | FORFEITED |
| **Good Standing:** | THIS BUSINESS IS **NOT IN GOOD STANDING**<br>» Order Certificate of Status |
| **Business Type:** | CORPORATION |
| **Business Code:** | ORDINARY BUSINESS - STOCK |
| **Date of Formation/ Registration:** | 03/15/2002 |
| **State of Formation:** | MD |
| **Stock Status:** | STOCK |
| **Close Status:** | NO |

Financial Data    **Organization Hierarchy**    History

# Organization Hierarchy
### Tiering Direction ⊕
Down

Effective Date:

1/9/2021

| Clear | Search |

**Download Results**

| Hierarchy CSV |

**Show** | 20 rows ∨ | **entries**

| Row ID | RSSD ID | Parent RSSD ID [Parent Row ID] | Institution Name | Institution Type | City | State/Country |
|---|---|---|---|---|---|---|
| 1 | 3882355 | | CASTLE POINT MORTGAGE | Domestic Entity Other | ELKRIDGE | MD |

Previous | 1 | Next



## CASTLE POINT MORTGAGE, INC.: D06715569

**Department ID Number:**
D06715569

**Business Name:**
CASTLE POINT MORTGAGE, INC.

**Principal Office:**
6800 DEERPATH ROAD
SUITE 105
ELKRIDGE MD 21075

**Resident Agent:**
NO ACTIVE RESIDENT AGENT FOUND

**Status:**
FORFEITED

**Good Standing:**
THIS BUSINESS IS NOT IN GOOD STANDING

**Business Type:**
CORPORATION

**Business Code:**
03 ORDINARY BUSINESS - STOCK

**Date of Formation/Registration:**
03/15/2002

**State of Formation:**
MD

**Stock Status:**
STOCK

**Close Status:**
NO

## CASTLE POINT MORTGAGE, INC.: D06715569

## Filing History

The items listed below are associated with this business.

👁 – Click to view/print PDF (note: some items may not be available to view)

💬 – Click to view comment associated with this item

| Item | Date/Time Filed | Film | Folio | Pages |
|------|-----------------|------|-------|-------|
| DEPT. ACTION - FORFEITURE 💬 | 10/3/2011 10:49:00 PM | | | |
| 👁 RESIGNATION OF RESIDENT AGENT | 7/11/2011 2:53:00 PM | | | 2 |
| 👁 RESIDENT AGENT CHANGE OF ADDRESS | 9/7/2006 12:02:00 PM | B01004 | 0825 | 73 |
| 👁 RESOLUTION | 5/31/2006 2:19:00 PM | B00978 | 1066 | 2 |
| 👁 RESOLUTION | 10/28/2004 2:17:00 PM | B00720 | 1492 | 2 |
| 👁 RESOLUTION | 7/13/2004 3:27:00 PM | B00688 | 0328 | 2 |
| 👁 RESOLUTION | 4/18/2003 12:11:00 PM | B00514 | 1400 | 2 |
| 👁 ARTICLES OF INCORPORATION | 3/15/2002 11:42:00 AM | B00358 | 0298 | 6 |

EXHIBIT

D

FEDERAL FINANCIAL INSTITUTIONS EXAMINATION COUNCIL

# NIC National Information Center (/npw)

A repository of financial data and institution characteristics collected by the Federal Reserve System

## CASTLE POINT MORTGAGE

**RSSD ID:** 3882355

6800 DEERPATH ROAD SUITE 105, ELKRIDGE, MD, UNITED STATES 21075

### Institution Details ◆

**Web Site:** N/A

**Institution Type:** Domestic Entity Other

**Primary Federal Regulator:** N/A ❸

**Primary Activity:** MORTGAGE AND NONMORTGAGE LOAN BROKERS

**Primary Activity Code:** 52231 ❸

**Status:** Active

**Insurance:** NOT INSURED OR NOT AVAIL.

**FDIC Certificate #:** N/A

**RTN/ABA:** N/A

**LEI:** N/A



After Recording Return To:
CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number: 3000135578



Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

—————————————————— [Space Above This Line For Recording Data] ——————————————————

# MORTGAGE

**MIN:** 1002735-3000135578-7

## WORDS USED OFTEN IN THIS DOCUMENT

Words used in multiple sections of this document are defined below. Other words are defined in Sections 3, 5, 8, 10, 11, 13, 18, 20 and 21. Certain rules about the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated   FEBRUARY 18, 2008   . The term "Security Instrument" includes any Riders recorded with the Security Instrument.
**(B)** "Borrower" means   KEVIN B FROST

who sometimes will be called "Borrower" and sometimes simply "I" or "me." "Borrower" is granting a mortgage under this Security Instrument. "Borrower" is not necessarily the same as the Person or Persons who signed the Note. The obligations of Borrowers who did not sign the Note are explained further in Section 13.
**(C)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
**(D)** "Lender" means   CASTLE POINT MORTGAGE, INC.

Lender is a corporation or association which exists under the laws of   MARYLAND
Lender's address is   6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND
21075

Except as provided in Sections 13 and 20, the term "Lender" may include any Person who takes ownership of the Note and this Security Instrument.
**(E)** "Note" means the note signed by   KEVIN B FROST

and dated   FEBRUARY 18, 2008   . The Note shows that its signer or signers owe Lender

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01                    Page 1 of 16

*DocMagic* eⒻⓇⓄⓇⓂⓈ *800-649-1362*
*www.docmagic.com*

ONE HUNDRED THIRTY THOUSAND AND 00/100
Dollars (U.S. $ 130,000.00          ) plus interest and promise to pay this debt in Periodic Payments and to pay the debt in full by  MARCH 1, 2038
**(F)**   "Property" means the property that is described below in the section titled "Description of the Property" or any portion of the Property.
**(G)**   "Sums Secured" means the unpaid balance of amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property."
**(H)**   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)**   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

**(J)**   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)**   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)**   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M)**   "Escrow Items" means those items that are described in Section 3.
**(N)**   "Miscellaneous Proceeds" means any monies or other thing of value paid by any third party, other than insurance proceeds paid under the coverages described in Section 5, for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property (see Section 11 for an explanation of "Condemnation"); (iii) conveyance in lieu of Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)**   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)**   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of the Security Instrument.
**(Q)**   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  When this Security Instrument refers to a requirement or restriction under "RESPA," Lender intends to abide by that requirement or restriction, even if it is not technically applicable to the Loan.
**(R)**   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.
**(S)**   "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security Instrument.  Such an arrangement usually takes the form of a long-term "ground lease."

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01                        Page 2 of 16            DocMagic eForms 800-649-1362
www.docmagic.com

Doc#: 2597
Bk: 4271 Ps: 210

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to MERS (solely as nominee for Lender and Lender's successors and assigns) and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to Lenders who hold mortgages on real property. Those rights that Applicable Law gives to Lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if:

    (A) Some or all of the Loan is not paid when due;
    (B) I fail to pay, with interest, any amounts that Lender spends under Section 9 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; or
    (C) I fail to keep any of my other promises and agreements under this Security Instrument. These amounts are the "Sums Secured."

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
    (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I grant and mortgage to MERS (solely as nominee for Lender and Lender's successors in interests) the Property described in (A) through (G) below:

    (A) The Property which is located at          36 COBBLE HILL ROAD
                                                 [Street]

                 SOUTH PARIS         . Maine    04281      ("Property Address"):
                    [City]                               [Zip Code]

This Property is in OXFORD                  County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: R5/25.22

    (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
    (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01                        Page 3 of 16             DocMagic eForms 800-649-1362
                                                          www.docmagic.com

Doc#:     2597
Bk: 4271 Pg:   211

# LEGAL ADDENDUM

A CERTAIN LOT OR PARCEL OF LAND SITUATED IN THE TOWN OF SOUTH, PARIS, COUNTY OF
OXFORD AND STATE OF MAINE, AND BEING MORE PARTICULARLY DESCRIBED AS LOT #22 AS THE
SAME IS DEPICTED ON A CERTAIN PLAN PREPARED FOR MAINE WOODLAND PROPERTIES ENTITLED
COBBLE HILL SUBDIVISION, BISCO ROAD, PARIS, MAINE PREPARED BY REED SURVEYING, INC.,
DATED MARCH 20TH, 1989 AND RECORDED IN THE OXFORD COUNTY REGISTRY OF DEEDS, EASTERN
DISTRICT, PLAN #2632 THROUGH AND INCLUDING #2640

TAX ID #: R5/25.22

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO KEVIN B. FROST BY ROBERT
MALCOLM PACKARD IN A WARRANTY DEED EXECUTED 6/14/2001 AND RECORDED 6/20/2001 IN BOOK
2957, PAGE 282 OF THE OXFORD COUNTY, MAINE LAND RECORDS



U44046B35-010P17
MORTGAGE

US Recordings

Doc#:      2597
Bk: 4271  Ps: 212

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country.  It also contains promises and agreements that vary, to a limited extent, in different parts of the country.  My promises and other agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1.    **Borrower's Promise to Pay.** If I signed the Note, I will pay to Lender when due principal and interest due under the Note and any prepayment charges and late charges due under the Note.  Regardless of whether I signed the Note, I will pay funds for Escrow Items as described in Section 3.  I will make all payments in U.S. currency.  If any Borrower makes any Loan payment to Lender with a check or other instrument that is returned for any reason (i.e., the check bounces), except when prohibited by Applicable Law, the Lender may require that any subsequent payment be made by:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check (all of which must be drawn on an institution whose deposits are insured by a federal agency, instrumentality, or entity); or (d) Electronic Funds Transfer.  Lender may reasonably specify which payment form is required.

Payments are only considered received when they reach the Lender's address specified in the Note, or a different address specified by Lender under Section 15 of this Security Instrument.  Lender may return any payments or partial payments if the payments are insufficient to bring the Loan current.  Lender may accept any payments or partial payments insufficient to bring the Loan current, but doing so will not affect Lender's rights under this Security Instrument, and Lender may still refuse such late, partial payments in the future.

I agree that no claim or legal right I may have against the Lender will excuse my obligation to make timely payments under the Loan or to keep my other promises in this Security Instrument.

2.    **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender will be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts payable under Section 3.  Such payments will be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts will be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from me for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent Periodic Payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from me to the repayment of the

Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary extra payments must be applied first to any charges for making voluntary extra payments and then as described in the Note.

If voluntary extra payments I may make or the crediting of insurance proceeds or Miscellaneous Proceeds to the Note are enough to pay principal ahead of schedule, I must still make my regularly scheduled Periodic Payments under the Note, when scheduled, without any delay or reduction of amount.

3.   **Monthly Payments for Taxes and Insurance.**

(a)   **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward the payment of the following items, which are called "Escrow Items:"

(1)   The taxes, assessments and other items which under the Applicable Law may be or become superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2)   The leasehold payment or Ground Rents on the Property (if any);

(3)   The premium for insurance covering the Property required under Section 5;

(4)   The premium for Mortgage Insurance (if any);

(5)   The amount I may be required to pay Lender under Section 10 below instead of the payment of the premium for Mortgage Insurance (if any); and

(6)   If Lender requires, Community Association Dues, Fees, and Assessments.

After signing of the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment that I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

I will promptly send Lender a copy of all notices of amounts to be paid under this Section. I must pay Lender for Escrow Items as part of my regular Periodic Payments, unless Lender excuses this requirement in writing. If Lender excuses me in writing, I will pay all Escrow Items covered by the excuse, directly and on time. I will provide receipts proving my direct payments of Escrow Items on request and in the time period Lender requires. If Lender excuses me from paying Escrow Items to Lender and if I fail to pay any amount due for an Escrow Item directly, Lender may pay such amount under Section 9, and I will be obligated to repay Lender, plus interest at the Note rate. Lender may revoke the excuse regarding any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, I will pay to Lender all Funds (defined below), and in such amounts, that are then required under this Section 3.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA, but (2) not to exceed the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

(b)   **Lender's Obligation.** Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction in the manner required by RESPA.

Lender may not charge me for holding or keeping the Funds, or for using the Funds to pay Escrow Items, or for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills.

Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law.

(c) **Adjustments to the Funds.** If there is a surplus of Funds held in escrow, as defined under RESPA, Lender will report to me regarding the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender will notify me as required by RESPA and I will pay to Lender the amount necessary to make up the shortage or deficiency as required by RESPA, but in no more than 12 monthly payments.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4.  **Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be or become superior to this Security Instrument. If I am a tenant under a ground lease on the Property, I will also pay Ground Rents or payments due under my ground lease. I will also pay any Community Association Dues, Fees, and Assessments. I will do this either by making the payments to Lender that are described in Section 3 above or, if I am not required to make payments to Lender under Section 3, by making the payments on time to the Person owed them. In this Security Instrument, the word "Person" means any natural person, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be or become superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation (but I must fully perform my agreement or this exception does not apply); (b) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced (but this exception ends when the lawsuit ends); or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance; Use of Insurance Proceeds.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by: (a) fire; (b) hazards normally covered by "extended coverage" hazard insurance policies; and (c) other hazards for which Lender requires coverage, including floods and earthquakes. The insurance must be in the amounts (including deductibles) and for the periods of time required by Lender. Lender's requirements can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain any of the insurance coverages described above, Lender may obtain insurance coverage at its option and charge me in accordance with Section 9 below.

Lender is under no obligation to purchase any particular type or amount of coverage. Lender's coverage will protect Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the Lender's insurance coverage might significantly exceed the cost of insurance that I could have obtained. Any amounts paid by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with interest, upon notice from Lender to me requesting payment.

Lender may require me to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. I will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from my objection.

All of the insurance policies required by Lender and renewals of those policies: (a) are subject to Lender's right to disapprove; (b) must include what is known as a "standard mortgage clause" to protect Lender; and (c) must name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewal certificates must be

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01                    Page 6 of 16                    DocMagic *eFerms* 800-649-1362
www.docmagic.com

Doc#: 2597
Bk: 4271 Pg: 215

acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts for paid premiums and renewal notices that I receive.

If I obtain additional insurance for damage to or destruction of the Property not required by Lender, I will ensure that it contains a standard mortgage clause and names Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the Insurance company and Lender. If I do not promptly prove to the Insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by any insurance company with regard to the Property is called "Proceeds." The Proceeds will be used to repair or to restore the damaged Property whether or not the underlying insurance was required by Lender unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Proceeds will be used to pay the Sums Secured. If any of the Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Proceeds will be paid to me. Such insurance proceeds will be applied in the order provided for in Section 2.

During the repair and restoration period, Lender will have the right to hold insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender will not be required to pay me any interest or earnings on Proceeds. Fees for public adjusters, or other third parties I retain, will not be paid out of the insurance proceeds and will be my sole obligation.

If I abandon the Property, or if I do not answer, within 30 days a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle any insurance claim. The 30-day period will begin when the notice is given.

If I abandon the Property, do not answer the notice, or if Lender acquires the Property under Section 22 below or otherwise, all of my rights in all insurance policies covering the Property will belong to Lender, other than the right to any refund of unearned premiums I have paid. Lender may use the insurance proceeds either to repair or restore the Property or to pay the Sums Secured, whether or not then due. However, Lender's rights in those Proceeds will not be greater than the Sums Secured.

6. **Occupancy.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligation to Maintain and Protect the Property; Inspections.** I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate or diminish in value due to its condition whether or not I am residing in the Property. In addition, I will promptly repair the Property, if damaged, to avoid further deterioration or damage unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, I will be responsible for repairing or restoring the Property only if Lender has released Proceeds for such purposes. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I will not be relieved of my obligation to complete such repair or restoration.

Lender or its agents may enter and inspect the Property at reasonable times. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give me notice prior to an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I made false, misleading, incomplete, or inaccurate statements to Lender about information important to Lender in determining my eligibility

---

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01

*DocMagic eForms* 800-649-1362
www.docmagic.com

Page 7 of 16

oc#:    2597
dk: 4271 Ps: 216

for the Loan ("Material Information"). Lender will treat my actions as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person, giving false, misleading, incomplete, or inaccurate statements about Material Information to Lender. False, misleading, incomplete, or inaccurate statements about Material Information would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, incomplete, or inaccurate statement of Material Information. Also, if during the loan application process I failed to provide Lender with Material Information, Lender will treat this as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person failing to provide Lender with Material Information.

9.  **Lender's Right to Protect its Rights in the Property.** If:  (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, for enforcement of a lien which may become superior to this Security Instrument or to enforce laws or regulations); or (c) I abandon the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding, may include appearing in court, paying reasonable attorneys' fees, paying superior liens on the Property, protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Securing the Property includes, for example, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  I agree that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9.  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so.  I will also pay interest on those amounts at the Note rate.  Interest on each amount will begin on the date that the amount is spent by Lender.

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property.  I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment.  I also agree that, if I subsequently purchase or otherwise become the owner of the Property, my interest as the tenant and my interest as the owner will remain separate unless Lender agrees in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage required by Lender lapses or ceases to be available from the original mortgage insurer, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available and if I was required to make separately designated payments toward the premiums for Mortgage Insurance, Lender will establish a loss reserve as a substitute for the Mortgage Insurance coverage.  I will pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect).  Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. Such loss reserve will not be refundable.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage again becomes available and is obtained.  In that case, I will once again make Mortgage Insurance premiums.  The Mortgage Insurance coverage must be in the amount and for the period of time required by Lender.  Lender must approve the insurance company providing the coverage.

I will pay the Mortgage Insurance premiums, or the non-refundable loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law.  Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in this Section 10.

This Section 10, and the existence or termination of my obligation to pay Mortgage Insurance premiums or reserve payments, does not affect my obligation to pay interest under the Note at the rate set by the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any- regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements about Miscellaneous Proceeds and Condemnation of the Property.** I assign to Lender all Miscellaneous Proceeds (as defined above in subsection (M) of the section entitled "Words Used Often In This Document"). All Miscellaneous Proceeds will be paid to Lender. Miscellaneous Proceeds include, among other things, awards or claims for damages for Condemnation. A taking of property by any governmental authority by eminent domain is known as "Condemnation."

If the Property is damaged, all Miscellaneous Proceeds will be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During the repair and restoration period, Lender will have the right to hold Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Miscellaneous Proceeds, Lender will not be required to pay me any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured by this Security Instrument, whether or not then due, with the excess, if any, paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

If all of the Property is taken or destroyed, the Miscellaneous Proceeds will be used to reduce the Sums Secured, whether or not then due. If any of the Miscellaneous Proceeds remain after the Loan has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction either is equal to, or greater than, the amount of the Sums Secured immediately before the partial taking or destruction, then a portion of the Miscellaneous Proceeds will be applied to pay a portion of the Loan. That portion will equal the Miscellaneous Proceeds multiplied by a fraction. That fraction is as follows: (a) the total amount of the Sums Secured immediately before the partial taking or destruction; divided by (b) the fair market value of the Property immediately before the partial taking or destruction. The remainder of the Miscellaneous Proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction is less than the amount of the Sums Secured immediately before the partial taking or destruction, the proceeds will be used to reduce the Sums Secured whether or not then due.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that the Opposing Party (as defined below) offered to make an award to settle a claim for damages, Lender has the authority to settle

any claim and collect the proceeds. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a legal action in regard to Miscellaneous Proceeds. Lender may then use the Miscellaneous Proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

I will be in default if any lawsuit or other legal proceeding is brought seeking Forfeiture of the Property or seeking any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" means a legal order or judgment that takes away some or all of my rights in the Property, whether in a civil or in a criminal proceeding. I can cure that default by causing the lawsuit or legal proceeding to be dismissed with a legal ruling that, in Lender's reasonable judgment, precludes any Forfeiture or any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. If there is any award or claim for damages for the reduction of Lender's interest or rights, the proceeds of that award or claim are assigned to and will be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations and of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, any Borrower, and any Successor in Interest of Borrower to delay or to change the amount of the Periodic Payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Successor in Interest of Borrower, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against a Successor in Interest of Borrower for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so by Borrower or a Successor in Interest of Borrower.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons or Successors in Interest; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower and of Persons Taking over Borrower's Rights or Obligations.** Except as provided in Section 18, any Successor in Interest of Borrower who takes over my rights or obligations under this Security Instrument in writing and who is approved by Lender will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. I will not be released from my liability under this Security Instrument unless Lender agrees to that release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument, except as provided in Section 20.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender can agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, and valuation fees. In regard to any other fees, the fact that this Security Instrument does not expressly authorize Lender to charge a specific fee to Borrower should not be interpreted to be a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits:  (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to me.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  My acceptance of any such refund made by direct payment to me will constitute a waiver of any right of action I might have arising out of such overcharge, unless Applicable Law expressly provides otherwise.

**15.  Notices Required under this Security Instrument.**  All notices given by me or Lender in connection with this Security Instrument must be in writing.  Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method.  The notice will be effective or "given" when mailed (or, if not mailed, when actually delivered) to my address, unless Applicable Law requires otherwise.  Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address.  I will promptly notify Lender of my change of address.  If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.

Any notice that must be given to Lender under this Security Instrument will be given by delivering or mailing it to Lender's address stated in subsection (C) of the section above entitled "Words Used Often In This Document." A notice will be mailed or delivered to Lender at a different address if Lender gives me a notice of the different address.  A notice to Lender required by this Security Instrument is not given until it is actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Law That Governs this Security Instrument; Interpretation.**  This Security Instrument is governed by federal law and the law that applies in the place where the Property is located.  If any term of this Security Instrument or of the Note conflicts with the Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence will not be construed as a prohibition against agreement by contract.

As used in this Security Instrument:  (a) words of the masculine gender will mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular will mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  I will be given one copy of the Note and of this Security Instrument.

**18.  Agreements about Lender's Rights If the Property Is Sold or Transferred.**  As used in this Section 18, "Interest in the Property" means any interest in the Property recognized or protected by Applicable Law including, for example, those interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, if the intent is the transfer of title by Borrower at a future date to a purchaser.

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission.  If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15.  The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered.  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) such other period as Applicable Law might specify for the termination of my right to reinstate; or (c) before a judgment has been entered enforcing this Security Instrument. If I meet the following conditions:

(1) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(2) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(3) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(4) I do whatever Lender reasonably requires to assure that Lender's interest in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Section 18 above.

**20. Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Notice of Grievances.** The Note, or an interest in the Note, together with this Security Instrument, can be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects my Periodic Payments due under the Note and this Security Instrument and also performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law is called the "Loan Servicer." There can be a change of the Loan Servicer as a result of the sale of the Note; there also can be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under RESPA. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA in connection with a notice of transfer of servicing. If the Note is sold, the Purchaser may hire a third party as Loan Servicer. In that case, the Loan Servicer, and not the Note Purchaser, will have mortgage loan servicing obligations to Borrower, except when the Note or Applicable Law expressly requires otherwise.

Lender and I agree that we will not start a lawsuit or legal proceeding or join, or be joined to, an existing lawsuit (such as a class action) that arises from the other party's actions pursuant to the Security Instrument or that claims the other party broke any promise or failed to fulfill any duty under this Security Instrument or relating to the Loan until: (a) the complaining party gives written notice in the manner provided in Section 15 to the other party; (b) the notice clearly describes the promise broken or the duty unfulfilled; and (c) the party receiving the notice is given a reasonable time to correct the problem. This provision does not apply if Applicable Law specifically authorizes a lawsuit by me against Lender under the facts in question and does not permit any cure or correction by Lender. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of default and opportunity to cure given to me pursuant to Section 22 and the demand for immediate payment in full given to Borrower pursuant to Section 18 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws."

Bk: 4271 Pg: 221

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous or as pollutants or wastes by Environmental Laws and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances."

An "Environmental Cleanup" includes any removal, remedial action or other response as defined in an Environmental Law. An "Environmental Condition" means a condition that can cause or contribute to or otherwise trigger an Environmental Cleanup.

Except as provided below: (a) I will not permit Hazardous Substances to be present on the Property; (b) I will not use or store Hazardous Substances on the Property; and (c) I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property.

I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so. I will not create an Environmental Condition affecting the Property or permit anyone else to do so or do anything which due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

If I know of: (a) any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws; (b) any Environmental Conditions, for example, any spill or leak of any Hazardous Substance; or (c) any condition relating to a Hazardous Substance that reduces the value of the Property, I will promptly notify the Lender in writing. If the government or a private party notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

This Section does not require the Lender to conduct or pay for any Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** After the occurrence of the conditions stated in subsections (a), (b) and (c) below, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

Lender may also require immediate payment in full if any of the events described in Section 18 occur, even if the conditions stated in subsections (a), (b) and (c) below are not met.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured;

(b) Lender sends to me, in the manner described in Section 15 above, a notice that states:

    (1) The promise or agreement that I failed to keep;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

Doc#:   2597
Bk: 4271 Pg:   222

(4)  That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

(5)  That if I meet the conditions stated in Section 19 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(6)  That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  **Lender's Obligation to Discharge this Security Instrument.**  When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied.  I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of my loan closing).

24.  **Payment During Foreclosure.**  I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Section 22 above.  Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

25.  **Riders to this Security Instrument.**  The promises and agreements of each Rider are incorporated as a part of this Security Instrument.

Doc#:     2597
Bk: 4271 Pg:  223

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in the Rider signed by me and recorded with it.

_____ (Seal)                    _____ (Seal)
KEVIN B FROST                    -Borrower                                                 -Borrower


_____ (Seal)                    _____ (Seal)
                                 -Borrower                                                 -Borrower


_____ (Seal)                    _____ (Seal)
                                 -Borrower                                                 -Borrower




Witness:                                                   Witness:


_____                           _____




MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01                          Page 15 of 16

DocMagic ERorms 800-649-1362
www.docmagic.com

oc‡    2597
‧k‡ 4271 Pg‡ 224

──────────── [Space Below This Line For Acknowledgment] ────────────

State of Maine

County of ~~OXFORD~~ Androscoggin )B *F.Ꝯ+*

The foregoing instrument was acknowledged before me this ___2/18/08___

by ___KEVIN B FROST_____

_____

_____

(SEAL)

_____
Notary Public, State of Maine

Patricia M. Beausang, Notary Public
State of Maine
My Commission Expires 6/1/2011
(Print or Type Name)

My commission expires: _6-1-11_____

Received
Recorded Register of Deeds
Mar 12,2008 11:52:59A
Oxford East County
Jane Rich

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01                     Page 16 of 16                     DocMagic @Raumas 800-649-1362
                                                                       www.docmagic.com



**OCWEN**

REPRESENTATION OF PRINTED DOCUMENT

Ocwen Loan Servicing, LLC

www.ocwen.com

*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

1/14/2019



**EXHIBIT F**

Loan Number: 601994863

4-814-ATS93-0007500-002-01-000-000-000-000



KEVIN B FROST
36 COBBLE HILL RD
SOUTH PARIS ME 04281-6529

**Property Address:**
36 Cobble Hill Rd
South Paris, ME 04281-6529

Dear Customer(s),

This is an important notice containing information <u>critical</u> to this mortgage account.

**Ocwen Loan Servicing** has joined forces with PHH Mortgage Services, a mortgage company with well-established mortgage origination and servicing capabilities. As a result, we will be consolidating all mortgage accounts into one company, **PHH Mortgage Services ("PHH")**.



**Why We Are Sending This Letter**

Effective **2/1/2019**, PHH will be the new servicer for this account and will be collecting the mortgage payments going forward.

Please rest assured that Ocwen will be here through this transition. Together, Ocwen and PHH stand ready to assist in any way we can. For any questions regarding the transition, please call **855.245.3916**.



**What Needs To Be Done**

Please send all payments due **on or after 2/1/2019 to PHH** at this address:

**PHH Mortgage Services**
P.O. Box 371458
Pittsburgh, PA 15250-7458

If currently using an Online Bill Payment provider, please contact them to update the payee, remittance address and new account number (if applicable). Failure to make these updates could delay the crediting of payments. If currently mailing in a payment, please use the coupon provided or wait until the new PHH statement is mailed.



**What We Will Do**

Due to this transfer, the account number will change. The Ocwen account number is 601994863, and the new PHH account number will be **8011085365**.

During the first week after 2/1/2019, no transactions can be made on the account while PHH verifies the accuracy of all account information in its system. As soon as this process is completed, the account will be activated and you will receive a welcome letter from PHH.

During the 60-day period following the transfer date of **2/1/2019**, any payment received by Ocwen on or before its due date will not be treated as late by PHH and no late fee will be charged.

NMLS # 1852                                                                                           GBYEPHH_ACH

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1

INTERNET REPRINT



REPRESENTATION OF PRINTED DOCUMENT

Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

---

## NOTICE OF SERVICING TRANSFER
### EFFECTIVE 2/1/2019



The servicing of your mortgage is being transferred, effective **2/1/2019**. This means that on or after this date, PHH will be collecting the mortgage payments. The transfer of servicing does not affect any term or condition of the mortgage other than terms directly related to the servicing of the account.

**Ocwen Loan Servicing, LLC ("Ocwen")** is now collecting the payments. Ocwen will stop accepting payments received after **1/31/2019**. **PHH Mortgage Services ("PHH")** will collect the payments going forward. PHH will start accepting payments received on **2/1/2019**.

Please send all payments due **on or after 2/1/2019 to PHH** at this address:

**PHH Mortgage Services**
P.O. Box 371458
Pittsburgh, PA 15250-7458

For any questions about the mortgage account or this transfer, please contact Ocwen or PHH using this information:

| | Until 1/31/2019: | On or After 2/1/2019: |
|---|---|---|
| **Servicer** | Current Servicer<br>Ocwen Loan Servicing, LLC | New Servicer<br>PHH Mortgage Services |
| **Department** | Customer Service | Customer Service |
| **Toll-Free Number** | 800.746.2936 | 877.744.2506 |
| **Website** | ocwencustomers.com | MortgageQuestions.com |
| **Address** | P.O. Box 24736<br>West Palm Beach, FL 33416 | 1 Mortgage Way<br>Mt. Laurel, NJ 08054 |
| **Account Number** | 601994863 | 8011085365 |

Under Federal law, during the 60-day period following the effective date of the transfer of mortgage servicing, a payment received by Ocwen on or before its due date may not be treated by PHH as late, and a late fee may not be assessed to the account.

Remember, Ocwen will be here for you throughout this transfer to assist in any way we can. If you have questions regarding this transition, please call us at **855.245.3916**.

Sincerely,
*Ocwen Loan Servicing, LLC*

NMLS # 1852                                                                                          GBYEPHH_ACH
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

INTERNET REPRINT

4-814-ATS93-4007500-002-02-000-000-000-000



**NOTE**

MIN: 1002735-3000135578-7          Loan Number: 3000135578

FEBRUARY 18, 2008                    ELKRIDGE           .          MARYLAND
          [Date]                                [City]                                  [State]

36 COBBLE HILL ROAD, SOUTH PARIS, MAINE 04281
                              [Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 130,000.00      (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is  CASTLE POINT MORTGAGE,
INC., A MARYLAND CORPORATION (CFL # 7981)                                                         .
I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and
who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest
at a yearly rate of      5.500 %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

**3. PAYMENTS**

(A)  Time and Place of Payments
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the  1st  day of each month beginning on  APRIL 1
2008  .  I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal.  If, on  MARCH 1, 2038                                   ,
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the
"Maturity Date."
    I will make my monthly payments at  7 ENTIN ROAD, PARSIPPANY, NEW JERSEY
07054
                                   or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $ 738.13       .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is
known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder
will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder
may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my
Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in
the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the
interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,
then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                          Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A)   Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be
    5.000    % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.
    **(B)   Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C)   Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
    **(D)   No Waiver By Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
    **(E)   Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**
    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to the Property Address above or at a different address if I give the Note Holder a notice of my different address.
    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**
    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**
    This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01            Page 2 of 3

*DocMagic ℰℱⓡⓒⓡⓡⓢ* 800-649-1262
*www.docmagic.com*

the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission.  If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full.  However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15.  The notice will give me at least 30 days to make the required payment.  The 30-day period will begin on the date the notice is mailed or delivered.  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
KEVIN B FROST          -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

[Sign Original Only]

PAY TO THE ORDER OF:      GMAC BANK
WITHOUT RECOURSE

CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

BY: _____

ITS: _____
     Douglas Hanke, VP-CLD

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                          Page 3 of 3

DocMagic *Forms* 800-649-1362
www.docmagic.com

PAY TO THE ORDER OF
GMAC MORTGAGE, LLC
WITHOUT RECOURSE

D. CHIODO
ASSISTANT SECRETARY
GMAC BANK

PAY TO THE ORDER OF

WITHOUT RECOURSE

D. CHIODO
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION



Doc#:        8980
Bk: 4622 Pg:  253

GMAC Loan #0601994863

# ASSIGNMENT OF MORTGAGE

**Mortgage Electronic Registration Systems, Inc.**, as nominee for Castle Point Mortgage, Inc. the present holder of a mortgage from **Kevin B. Frost**, dated 2/18/2008 and recorded in the Oxford County Registry of Deeds in Book 4271, Page 208, assigns said mortgage to:

**Federal National Mortgage Association**
**1133 15ᵗʰ Street, N.W.**
**Washington, DC 20016**

The property subject to said mortgage is commonly known as:  **36 Cobble Hill Road, South Paris, Maine.**

The effective date of this assignment shall be July 8, 2010.

Executed this 27th day of July , 2010

**Mortgage Electronic Registration**
**Systems, Inc., as nominee for Castle Point**
**Mortgage, Inc.**

By:

Its Vice President

**Jeffrey Stephan**
**Vice President**

COMMONWEATLTH OF PENNSYLVANIA
COUNTY OF MONTGOMERY

Personally appeared the above-named Jeffrey Stephan, Vice President of Mortgage Electronic Registration Systems, Inc., as nominee for Castle Point Mortgage, Inc. and acknowledged the foregoing instrument to be his/her free act and deed in said capacity and the free act and deed of said Mortgage Electronic Registration Systems, Inc., as nominee for Castle Point Mortgage, Inc.

DATED: July 27th , 2010

Notary Public

Print Name

My Commission Expires

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Wittbank, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 10, 2013
Member, Pennsylvania Association of Notaries

Received
Recorded Register of Deeds
Aug 19,2010 09:36A
Oxford East County
Jane Rich

AFTER RECORDING RETURN TO:
DOCUMENT PROCESSING SOLUTIONS, INC.
590 W. LAMBERT RD
BREA, CA 92821

DOC 14294 BK 5258 PG 50

APN #: R5/25.22
Prepared By: David Santa / PD
~~When Recorded Mail To:~~
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

## ASSIGNMENT OF MORTGAGE
## MAINE

601994 863

This **ASSIGNMENT OF MORTGAGE** from **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignor") to **OCWEN LOAN SERVICING, LLC**, whose address is 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the Public Records of **OXFORD EAST** County, State of **MAINE**, as follows;

Mortgagor: KEVIN B. FROST
Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR CASTLE POINT MORTGAGE, INC.
Document Date: FEBRUARY 18, 2008
Amount: $ 130,000.00
Recording Date: MARCH 12, 2008
Instrument Number: 2597
Book/Volume/Docket/Liber: 4271
Page/Folio: 208
Property address: 36 COBBLE HILL ROAD, SOUTH PARIS, ME 04281

This Assignment is made without recourse, representation or warranty.
IN WITNESS WHEREOF the Assignor has caused these presents to be executed in its name, by its proper officer thereunto duly authorized, the ___27th___ day of ___August___, 2015

FEDERAL NATIONAL MORTGAGE ASSOCIATION
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC.

BY: _____

NAME: Gisele Cazeau

TITLE: Authorized Signer

Signed, sealed and delivered in the presence of:

(1) _____ Bendiane Zephir

(2) _____ Felicia Perry

STATE OF FLORIDA        )
                        )ss.
COUNTY OF PALM BEACH    )

The foregoing instrument was acknowledged before me this ___27th___ day of ___August___, 2015, ___Gisele Cazeau___ Authorized Signer at Ocwen Loan Servicing, LLC, Attorney in Fact For FEDERAL NATIONAL MORTGAGE ASSOCIATION on behalf of the company. He/(she) is personally known to me.

Notary Public State of Florida
April N Alston
My Commission EE 214100
Expires 07/06/2016

_____
Notary Public —
State of Florida        April Alston



EXHIBIT

J

**MERS** ServiceID
www.mers-servicerid.org

**1 record matched your search:**

MIN: 1002735-3000135578-7   Note Date: 02/18/2008        MIN Status: Inactive

Servicer:   GMAC Mortgage, LLC                           Phone: (800) 766-4622
            fort washington, PA

If you are a borrower on this loan, you can click here to enter additional information and
display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2021 by MERSCORP Holdings, Inc.

Select borrower type and enter borrower information to see Investor for MIN 1002735-3000135578-7.

◉ Investor for Individual Borrower

Your entries may be either upper or lower case.
★Fields markedare required.
★Last Name: frost

★SSN:

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the ★investor information will not be displayed. Borrowers should verify the results with their loan servicer.

[Submit]

○ Investor for Corporation/Non-Person Entity Borrower

Your entries may be either upper or lower case.
★Fields markedare required.
Corporation/Non-Person Entity Name:

★

★Taxpayer Identification Number:

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the ★investor information will not be displayed. Borrowers should verify the results with their loan servicer.

[Submit]

Servicer:   GMAC Mortgage, LLC                    Phone:  (800) 766-4622
            fort washington, PA

Investor:   Fannie Mae