## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| KEVIN B. FROST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:21-cv-00112-NT |
| | ) | |
| CASTLE POINT MORTGAGE, INC., | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, OCWEN LOAN | ) | |
| SERVICING, LLC, AND PHH | ) | |
| MORTGAGE SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before me is the motion to dismiss the Plaintiff's Complaint ("**Complaint**") filed by Defendants Mortgage Electronic Registration Systems, Inc., Federal National Mortgage Association, Ocwen Loan Servicing, LLC, and PHH Mortgage Services (collectively, the "**Defendants**") for failure to state a claim upon which relief can be granted ("**Defs.' Mot.**") (ECF No. 9). For the reasons stated below, the motion to dismiss is **GRANTED**.

## BACKGROUND

The federal case before me involves a dispute between the Plaintiff and various Defendants over a mortgage on the Plaintiff's property in South Paris, Maine. I begin with a brief summary of the thirteen-year history of this mortgage. In 2008, the Plaintiff executed and delivered to Mortgage Electronic Registration Systems, Inc.

("**MERS**"), as nominee for Castle Point Mortgage, Inc. ("**Castle Point**"), a promissory note and mortgage (the "**Mortgage**") secured by the South Paris property. Compl. ¶¶ 5, 16–18 (ECF No. 1-1); Compl. Exs. E, G. The Mortgage states that Castle Point is the "Lender" under the mortgage and that MERS "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." Compl. Ex. E. In 2010, MERS attempted to assign the Mortgage to Federal National Mortgage Association ("**FNMA**"). Compl. ¶ 19; Compl. Ex. H. Then in 2015, FNMA assigned its interest in the Mortgage to Ocwen Loan Servicing ("**Ocwen**").[1] Compl. ¶¶ 20, 42; Compl. Ex. I.

The Plaintiff, who is proceeding pro se, filed his Complaint on April 20, 2021. He alleges that Castle Point still holds the Mortgage because there is no legal instrument that conveyed all of Castle Point's rights under the Mortgage to another lender. Compl. ¶¶ 25–26. Because MERS, as nominee for Castle Point, only held the right to record the Mortgage, all assignments stemming from MERS only transferred the right to record. Compl. ¶ 35; *see* Compl. Ex. H. But in 2010, claiming to be the holder of the note, FNMA instituted "multiple foreclosures and various legal actions" against the Plaintiff, which the Plaintiff claims creates a "lingering cloud" on the title of the South Paris property. Compl. ¶ 40.

In April of 2015, Ocwen represented to the Plaintiff that it was the holder of the note and Mortgage, and Ocwen gave the Plaintiff a loan modification offer to avoid

---

[1]     The Complaint contains conflicting allegations about when this assignment occurred, *compare* Compl. ¶ 20 *with* Compl. ¶ 42, but the assignment itself shows a date of August 27, 2015. *See* Compl. Ex. I.

foreclosure. Compl. ¶ 41. In August of 2015, months after execution of the modification, FNMA assigned the right to record the Mortgage to Ocwen. Compl. ¶ 42; *see* Compl. Ex. I. In 2017, FNMA again claimed to hold the note and tried to quiet title without naming Ocwen. Compl. ¶ 43.  In 2019, PHH Mortgage Services ("**PHH**") took over servicing of the mortgage from Ocwen. Compl. ¶ 44; *see* Compl. Ex. F. The Plaintiff alleges that FNMA's "multiple court actions," including foreclosure attempts and an attempt to gain title, are on the record and have "disallowed . . . his right to live peacefully without constant fear of the numerous claims initiated against his property." Compl. ¶¶ 48, 50. In addition, Ocwen's modification is "a cause of question." Compl. ¶ 51. The ongoing collection effort "without resolution continues to cloud the title." Compl. ¶ 44.

The Plaintiff brought this action[2] to quiet title to the South Paris property pursuant to 14 M.R.S. §§ 6651 *et seq.* and for equitable relief. He theorizes that, because MERS did not have authority to assign the Mortgage to FNMA back in 2010,[3] Castle Point still holds the Mortgage because it never conveyed all its rights under the Mortgage to another lender. Compl. ¶¶ 19, 26, 28–35. The Plaintiff maintains that it is now impossible for the Mortgage to be transferred to any new lender because Castle Point, the original lender and holder of the Mortgage, has been defunct since 2008. Compl. ¶¶ 26–27, 36.

---

[2]     The Plaintiff filed his Complaint in state court, but the Defendants removed to this Court. I have jurisdiction over the action because there is complete diversity of citizenship between the Plaintiff and all Defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

[3]     In support of this position, the Plaintiff cites *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, 2 A.3d 289 and *Bank of Am., NA. v. Greenleaf*, 2014 ME. 89, 96 A.3d 700.

The Plaintiff seeks a declaration that he holds title to the South Paris property unencumbered by the Mortgage and that each of the Defendants have no right, title, or interest in the property. Compl. ¶¶ 39, 45. He asks that all assignments of the Mortgage be removed from the registry of deeds and the Defendants be "forever enjoined" from asserting any interest in the property that is adverse to the Plaintiff, including enforcement of the Mortgage and note. *See* Compl. ¶¶ 39, 45, Count I Prayer for Relief. The Plaintiff also requests that I void the Mortgage between Castle Point and the Plaintiff, bar MERS from the Mortgage, bar PHH from the Mortgage and stop it from collecting anything more, remove the foreclosure actions commenced by FNMA from the record or correct the record in some way, bar all Defendants from taking any future action on the title of the South Paris property, and expunge all debt associated with the Mortgage and stop enforcement of the note. *See* Compl. Count II Prayer for Relief.

The Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. They argue that the Plaintiff's theory—that the note and Mortgage should be invalidated because the MERS assignment is ineffective under *Bank of America v. Greenleaf*, 2014 ME. 89, 96 A.3d 700, and the original lender, Castle Point, has forfeited its corporate status—fails as a matter of law. Defs.' Mot. 5–7.

## LEGAL STANDARD

"To withstand a Rule 12(b)(6) motion, a complaint must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.' " *Ríos-*

4

*Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). To determine whether a complaint states a claim, courts in the First Circuit follow a two-step analysis. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021) (quoting *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020)). Then, taking all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor, the court must determine whether the complaint "plausibly narrate[s] a claim for relief." *Id.* (quoting *Zell*, 957 F.3d at 7). "Plausible, of course, means something more than merely possible," and the plausibility of a claim is based on the context of the particular case, judicial experience, and common sense. *Id.* (quoting *Zell*, 957 F.3d at 7). Although a plaintiff need not establish a prima facie case of his or her claim at the pleading stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013).

In deciding a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.' " *Id.* (citation omitted). Additionally, because the Plaintiff is a *pro se* litigant, his complaint

5

is subjected to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). And his supplemental submissions, such as his response to the motion to dismiss, may help interpret the nature and basis of his claims. *See Wall v. Dion,* 257 F. Supp. 2d 316, 318 (D. Me. 2003).

## DISCUSSION

The Defendants advance three arguments as to why the complaint should be dismissed for failure to state a claim. First, they argue that *Greenleaf* mainly concerned how plaintiffs can establish standing in foreclosure actions, not the validity or enforceability of any lien on property. Defs.' Mot. 5–6. Next, to dispute the Plaintiff's claim that, because of Castle Point's forfeited corporate status, no entity can demonstrate ownership of the note and Mortgage, the Defendants point to provisions of Maryland law (where Castle Point had been incorporated) that provide authority for the directors of a forfeited corporation to take any acts necessary to wind up the corporation's affairs, which the Defendants argue includes transferring any interest Castle Point may have in the Mortgage. Defs.' Mot. 6–7. Finally, the Defendants argue that, because there is no currently pending foreclosure, there is no justiciable dispute that is ripe for adjudication. Defs.' Mot. 7.[4]

---

[4] The Plaintiff correctly points out that the Defendants omit the fact that they have tried to obtain this property through "multiple and continuous legal threats and actions." Pl.'s Opp'n to Def.'s [*sic*] Mot. to Dismiss ("**Pl.'s Opp'n**") 7 (ECF No. 11). A review of the public records in the Oxford County Registry of Deeds shows that Defendant Federal National Mortgage Association ("**FNMA**") filed foreclosure actions against the Plaintiff in state court in 2010 (which the court dismissed in 2011) and again in 2013. In addition, a Clerk's Certificate recorded in 2018 reveals that FNMA attempted a similar quiet title route as the Plaintiff in a 2017 state case seeking a declaratory judgment, to quiet

## I.     Quiet Title and Title Theory

I start my analysis with the Plaintiff's quiet title claim. Maine's quiet title statute provides:

> A person in possession of real property, claiming an estate of freehold therein . . . may, if he or those under whom he claims or those claiming under him have been in uninterrupted possession of such property for 4 years or more, bring an action . . . setting forth his estate, stating the source of his title, describing the premises, and averring that an apprehension exists that persons named in the complaint . . . claim or may claim some right, title or interest in the premises adverse to his said estate; and that such apprehension creates a cloud upon the title and depreciates the market value of the property . . . .

14 M.R.S. § 6651. Under Maine law, to proceed on a quiet title claim, the Plaintiff must show that the defendants named in his quiet title action claim an "interest in the premises adverse to" the Plaintiff's interest. *Id.*

The First Circuit addressed a similar issue in *Lister v. Bank of America, N.A.,* 790 F.3d 20 (1st Cir. 2015). There, the two plaintiffs, claiming uncertainty as to which entity held a mortgage on their Rhode Island home, sued a bank and loan servicing company that potentially held the mortgage by virtue of assignments. *Id.* at 21–22. Following threats of foreclosure, the plaintiffs made requests for information and verification about the handling of the note and mortgage, which went unanswered by the bank. *Id.* at 22. The plaintiffs then filed suit and included a quiet title count seeking to nullify the note and mortgage. *Id.* at 23. The district court granted the defendants' motion to dismiss. *Id.*

---

title, and for equitable relief against Castle Point Mortgage, Inc., naming the Plaintiff and MERS as parties-in-interest. *See also* Compl. ¶ 54.

On appeal, the First Circuit looked to Rhode Island's quiet title statute and noted that Rhode Island follows "the title theory of mortgage law," meaning it "splits the title to a property in two parts: the legal title, which becomes the mortgagee's and secures the underlying debt, and the equitable title, which the mortgagor retains." *Id.* at 24–25 (quoting *Lemelson v. U.S. Bank Nat'l Ass'n,* 721 F.3d 18, 23 (1st Cir. 2013)). The Court explained that, "given the way title is split," "the mortgagor's and mortgagee's respective estates (or interests) are not adverse, but instead are 'prima facie consistent with each other.'" *Id.* at 25 (quoting *Lemelson,* 721 F.3d at 24). In other words, "[t]he mortgagor and mortgagee each possess 'complementary' and 'separate' claims; one party's interest (legal or equitable), as a general rule, does not interfere with the other's." *Id.* (citing *Lemelson,* 721 F.3d at 24).

The Court then applied that principle to the *Lister* plaintiffs' quiet title claim seeking to resolve uncertainty over who held the mortgage. Although the plaintiffs no longer had legal title to the property, their allegations concerning the uncertainty of the current mortgage holder spoke "solely to the legal title" and not to the plaintiffs' equitable interest. *Id.* Because the plaintiffs' claim thus lacked the "requisite adversity to cloud [their] claim of equitable title," the First Circuit held that it "necessarily fails" and affirmed the district court's dismissal of the action. *Id.* (citation omitted).

## II.   The Plaintiff's Quiet Title Claim

As in *Lister*, "[t]he key to this case is determining the import of th[e] mortgagor-mortgagee relationship on the quiet title regime." *Id.* Like Rhode Island, Maine is a title theory state. *See Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010

ME 79, ¶ 8, 2 A.3d 289 (citing *Johnson v. McNeil*, 2002 ME 99, ¶ 10, 800 A.2d 702). Under the title theory of mortgages in Maine, "a mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession." *Id.* The legal title "passes immediately upon the delivery of the mortgage." *Johnson*, 2002 ME 99, ¶ 11 (quoting *Gilman v. Wills,* 66 Me. 273, 275 (1877)).

Although the Plaintiff's pleadings correctly track the requirements under Maine's quiet title statute for bringing an action, they fail to state a claim to quiet title for the reasons explained by the First Circuit in *Lister*.[5] The allegations in the Complaint—that any assignments of the Mortgage from MERS are unenforceable under *Saunders* and *Greenleaf* and that any deficient MERS transfers cannot be remedied because Castle Point is now defunct—"ultimately boil down to uncertainty over who holds the mortgage." *See Lister*, 790 F.3d at 25; *see also* Compl. ¶ 16 ("The controversy is centered around the note, the mortgage, the status of Castle Point . . . and the transfer or lack thereof of the Original lender's interest and rights.").

When the Plaintiff executed and delivered the Mortgage to Castle Point in 2008, the legal title of the South Paris property passed to Castle Point, leaving the Plaintiff with only the equitable title.[6] *See* Compl. ¶ 47. Therefore, contrary to the

---

[5]    I recognize that Maine's quiet title statute is not identical to the Rhode Island one analyzed in *Lister v. Bank of America, N.A.*, 790 F.3d 20 (2015). But they are "substantively analogous" and, like the First Circuit in its comparison of the Rhode Island quiet title statute at issue in *Lister* and the Massachusetts "try title" statute examined in *Lemelson v. U.S. Bank National Ass'n*, 721 F.3d 18 (1st Cir. 2013), I am "hard-pressed to hypothesize a manner in which [Maine]'s understanding of title could lead to a different result." *See Lister*, 790 F.3d at 25 & n.7.

[6]    In his opposition, the Plaintiff claims that his "signature is not on the Castle Point Mortgage" and expresses "confusion about how his signature appeared on the MERS mortgage also." Pl.'s Opp'n

Plaintiff's understanding, the Plaintiff's and Defendants' interests are not adverse. *See Lister*, 790 F.3d at 25–26 ("[W]hile the economic interests of [plaintiff] and the mortgagee might be adverse in the sense that she disputes owing any money, [plaintiff] cannot be heard to argue that the mortgagee's claim is adverse to her own within the meaning of the quiet title statute." (citation and internal quotation marks omitted)); *Lemelson*, 721 F.3d at 24 n.7 ("Uncertainty as to who holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's claim of equitable title."). Any existing apprehension as to who currently holds the mortgage and the legal title to the property does not cloud the Plaintiff's equitable interest.

Finally, I consider whether the Plaintiff's allegations concerning FNMA's past efforts to foreclose help the Plaintiff sufficiently state a claim that might survive the motion to dismiss. The First Circuit has not yet considered "how a foreclosure might alter the mortgagor-mortgagee relationship in a quiet title proceeding." *Lister*, 790 F.3d at 24 n.5. But here the parties agree that there is no foreclosure currently pending. *See* Compl. ¶ 53; Defs.' Mot. 7; Pl.'s Opp'n 4, 10–11. And the First Circuit's *Lister* opinion shows that threats of foreclosure do not transform the mortgagor-mortgagee relationship into an adverse one for purposes of satisfying the quiet title

2; *see also* Compl. ¶ 54 ("The Property Owner was under the belief he was entering [in]to a contract with Castle Point only . . . ."). But then he also states that he "remembers signing one mortgage with whom he thought was with Castle Point." Pl.'s Opp'n 2. Having reviewed the incorporated documents, including the mortgage that was recorded by MERS in the Oxford County Registry of Deeds at Book 4271, Page 208, I see that what the Plaintiff refers to as the "MERS mortgage" is in fact the mortgage he admits to signing with Castle Point. *See* Compl. ¶ 18; Compl. Ex. E. Although the Plaintiff argues in his opposition that he may not have agreed to the Mortgage at issue, the allegations in his Complaint and the Mortgage itself (attached to the Plaintiff's Complaint as Exhibit E and incorporated by reference) show that the Plaintiff did sign and deliver the Mortgage to Castle Point, which MERS then recorded as nominee. *See Lister*, 790 F.3d at 23 (explaining that the court may "disregard facts which have been conclusively contradicted by plaintiffs' concessions or otherwise" (citation omitted)).

statute. *See Lister*, 790 F.3d at 22, 25–26. Nor does the fact that the Defendants previously tried to foreclose against the Plaintiff. *See Lemelson*, 721 F.3d at 24 (affirming district court's dismissal of Massachusetts petition to try title where the petitioners' alleged ability to maintain the action was based on the bank's "efforts to foreclose"). Therefore, despite the Defendants' foreclosure threats and past attempts, the Plaintiff has not alleged an adverse claim under Maine's quiet title statute, 14 M.R.S. § 6651.

Because the Plaintiff was required to allege an adverse claim to withstand the Defendants' motion to dismiss his quiet title and equitable relief action and because the Complaint does not allege an adverse claim, the Plaintiff has failed to state a claim and the Complaint must be dismissed.[7]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motion to dismiss (ECF No. 9). The Plaintiff's claims against all Defendants—Castle Point Mortgage, Inc., Mortgage Electronic Registration Systems, Inc., Federal National

---

[7]        Given that the Plaintiff's failure to state a claim under Maine title law is fatal to his Complaint's survival, I need not address the three arguments advanced by the Defendants in support of their Motion to Dismiss. Further, I am dismissing the Plaintiff's claims against all of the Defendants because, as a matter of law, the Plaintiff has not stated a claim that his interest is adverse to any of the Defendants due to the mortgagor-mortgagee relationship. I am, however, dismissing the Plaintiff's claims without prejudice as he requested. *See* Pl.'s Opp'n 11 ("If this Court feels this case must be dismissed per law, Plaintiff prays it is without Prejudice."). Even though the Plaintiff does not currently have an interest that is adverse to the Defendants, his interest could become adverse in a foreclosure action, and FNMA's actions suggest that it may try to foreclose again soon. *See* Defs.' Mem. in Further Supp. of Mot. to Dismiss Pl.'s Compl. 1 n.1 (ECF No. 12) (pointing out a Castle Point-to-FNMA quitclaim assignment that has been recorded since the filing of this lawsuit). Therefore, I am dismissing the Plaintiff's claims without prejudice so as to preserve any counterclaims or defenses the Plaintiff may wish to later assert in a future foreclosure action. Whatever comes next, the parties would be well-advised to put their efforts and resources into resolving this matter, including by taking advantage of Maine's Foreclosure Diversion Program.

Mortgage Association, Ocwen Loan Servicing, LLC, and PHH Mortgage Services—

are **DISMISSED** without prejudice.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 25th day of October, 2021.